**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mable LINDSAY, Defendant–Appellant.**

No. 98–1193.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1998.

Decided Oct. 13, 1998.

Joel V. Merkel (argued), Office of the United States Attorney, Fairview Heights, IL, for plaintiff–appellee.

David M. Williams (argued), Fairfield, IL, for defendant–appellant.

Before POSNER, Chief Judge, and RIPPLE and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Mable Lindsay operated a convenience store known as Lindsay's Corner, which was located on Route 145 in Eddyville, Illinois. For about nine years, she had the market to herself, but in November 1993, Randall Hicks and his wife Peggy opened up a rival store directly across the highway, which they called Hicks Shawnee Mart (the "Shawnee Mart"). The competition may have been beneficial to travelers on Route 145, but it cut deeply into the profits of Lindsay's Corner. Most business owners, faced with such a situation, would either work harder to succeed or choose an option like relocating or closing the business. Lindsay resorted to more drastic measures. She hired Dennis Lance Martin to torch the Shawnee Mart, which he did, for a payment of $600. Eventually, Lindsay and Martin were both caught, and Lindsay was indicted by a federal grand jury for conspiracy to violate 18 U.S.C. § 844(i), which prohibits arson of a building affecting interstate commerce. On this direct criminal appeal, even though he recognizes the uphill battle he faces, Lindsay's lawyer argues only that trial counsel was constitutionally ineffective in a variety of ways. This is not the exceedingly rare case in which such a claim can succeed on direct appeal, cf. United States v. Trevino, 60 F.3d 333, 339 (7th Cir.1995); Guinan v. United States, 6 F.3d 468, 473 (7th Cir.1993) (Easterbrook, J., concurring), and we therefore affirm her conviction.

The background facts are fairly straightforward. In late November or early December 1994, Lindsay offered Martin $500 to burn the Shawnee Mart. Martin was interested, and he went out and bought a gasoline container and flares on December 4, 1994. In the wee hours of the morning of December 5, Michael Sumner drove Martin to an area near the Shawnee Mart. Martin forcibly entered the store and set it ablaze. As a (controversial) amateur videotape introduced at trial illustrated, the store and its contents were completely destroyed. Estimates of the total loss vary, but Lindsay's lawyer puts it at over $200,000. The Hickses suffered the bulk of the damages, but Ray Wilson, the owner of the building housing the store, bore some of the losses as well. The Hickses were able to salvage some burned U.S. currency representing receipts from the night before by turning it over to the U.S. Treasury and receiving replacement bills. For some unexplained reason, Lindsay paid Martin $600, not $500, for his efforts.

Before the events of December 4 and 5, Lindsay had made other efforts to find a willing arsonist. She had offered a far more generous $5,000 to Bobby Pipkins on several occasions during the fall of 1994 to do the job, but he did not oblige. The reason Martin had been more accommodating related to his own financial problems. A cocaine addict, he needed money to pay his supplier, "Little Joe" from Detroit. When "Little Joe" found out about Lindsay's offer, he pressured Martin into accepting the job and apparently (with Sumner) helped to carry it out. A few months later, Martin was arrested for burglary in Johnson County, Illinois. Tired of his life of crime, Martin volunteered to tell the Sheriff there about the fire and about other burglaries he had committed, several of which he was ultimately tried and

convicted · for. After the arrest, Martin agreed to help the police in their arson investigation. Wearing a wire transmitter, he engaged Lindsay in conversation about the fire. In that conversation, he told her that he had been· in court in Johnson County and that the detectives there had asked him to take a lie detector test. Lindsay strongly advised him to refuse. Martin then asked her if she had told anyone else that she had paid him to "do it," and she said no. That exchange was captured on the tape and used at trial.

At the outset of her criminal proceeding, the court appointed attorney David M. Williams to represent Lindsay. She chose to plead not guilty and to go to trial before a jury. After a few continuances, she did just that, but she had become dissatisfied with Williams and had dismissed him as her lawyer prior to trial. She replaced Williams with retained attorney John McDermott. (We note with disfavor two facts. First, appellate counsel, the same Williams, failed to list McDermott in his Certificate of Interest, even though Circuit Rule 26.1(3) requires counsel to list all lawyers who *have* appeared for the party in the case and all lawyers who are expected to appear. This kind of omission makes it far more difficult for the judges of this court to evaluate the case for possible disqualification, and we admonish both Mr. Williams and all other lawyers who practice in this court not to make this mistake again. Second, the district court was willing to make a gift of public money to mount Lindsay's defense, when clearly she could afford to do so on her own. In such circumstances, we encourage courts to use their authority under 18 U.S.C. § 3006A(f) to order a defendant to reimburse the state for the costs it has borne.)

McDermott handled the trial, which lasted from August 25 to August 28, 1997, and ended in the jury's finding of guilty. By now, Lindsay was unhappy with McDermott's performance. Before sentencing, she dismissed McDermott and reengaged Williams, now as retained counsel. Williams secured a postponement of her initial sentencing date, and her failure to appear on the rescheduled date of January 9, 1998, pushed the time of sentencing back further. On January ·14, 1998, she was arrested on a bench warrant and was sentenced to 48 months' imprisonment, along with a $50 special assessment and a restitution obligation of $77,956. Williams then filed this appeal on her behalf.

The only argument Williams has found for Lindsay's appeal is that the record itself reveals that McDermott performed so poorly that the assistance he rendered failed the test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Aside from pointing out that McDermott filed no pretrial motions, made "few if any" objections to the evidence, called no rebuttal witnesses, and offered no evidence on Lindsay's behalf beyond her own testimony, Williams identifies six specific ways in which McDermott's performance was wanting, all of which he alleges prejudiced his client:

1. Failure to make a timely objection to the prosecutor's use of the videotape depicting the Shawnee Mart before the fire, after the fire, during reconstruction, and after its reopening.

2. Failure adequately to cross-examine Martin about his prior criminal history.

3. Failure to call witnesses who would impeach Martin's testimony.

4. Failure to call witnesses who would impeach Randall Hicks' testimony.

5. Failure to object or to request a limiting instruction for Pipkins' testimony.

6. Failure to object to some ten comments made during the prosecutor's closing argument, most of which allegedly involved the impermissible insertion of the prosecutor's personal opinion into the case.

 Claims of ineffective assistance of counsel, whether raised on direct appeal or through the vehicle of a motion under 28 U.S.C. § 2255, must meet both parts of the test announced in *Strickland*, known often by the culinary metaphor of the "performance" prong and the "prejudice" prong. That is, the defendant must first show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. In making this determina-

tion, a reviewing court should consider the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct, and there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies. *Id.* at 689–90, 104 S.Ct. 2052. Second, the defendant must demonstrate a reasonable probability that counsel's deficient performance affected the result at trial. *Id.* at 694, 104 S.Ct. 2052. As we have often noted, on direct appeal, review of counsel's performance "must rest solely on the trial court record, which often offers little insight into counsel's decisionmaking process." *Bond v. United States,* 1 F.3d 631, 635 (7th Cir.1993). For that reason, we must disregard the affidavits from Williams himself and from Mike Maynard, a private investigator, that Lindsay has attached to her brief on appeal. Even though the government has not objected to their inclusion, they were not part of the record of the case, see Fed. R.App. P. 10(a), and Lindsay has never filed a proper motion in the district court seeking to supplement the record. See Fed. R.App. P. 10(e); Cir. R. 10(b).

■ On the record as it is, Lindsay first complains that counsel should have objected to the prosecutor's decision to play the entire videotape showing the rise, fall, and rebirth of the Shawnee Mart. She appears to concede that the portions of the tape showing the store before the fire and immediately after the fire were relevant and properly admitted, but she thinks trial counsel should have objected to the reconstruction and reopening portions as irrelevant under Fed. R.Evid. 401, or, in the alternative, counsel should have made an objection under Rule 403. The government responds that the latter parts of the tape were relevant to its accountant's gross receipts analysis, and that this analysis helped to establish Lindsay's motive for the crime. In reply, Lindsay weakly retorts that even if the tape may indeed have supported the motive issue, it was not "necessary" for the government. But "necessity" is not the standard for admissibility. *Cf. Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 653–54, 136 L.Ed.2d 574 (1997). McDermott's decision not to challenge the admissibility of the entire tape lies well within the bounds of competent performance, which disposes of this argument.

■ Lindsay next argues that McDermott's cross–examination of Martin was wanting in three respects: (1) he did not emphasize that Martin had earlier burglarized the Shawnee Mart; (2) he failed to alert the jury to the fact that Martin's earlier Kentucky conviction for "wanton endangerment" was really for kidnaping, robbery, and assault; and (3) he did not produce Lindsay's bank records, which would have shown that Lindsay did not get the six crisp $100 bills with which she paid Martin from her own account. None of these imagined oversights demonstrates unprofessional sloppiness on McDermott's part. As the government notes, McDermott did in fact emphasize the connection between Martin's earlier burglary of the Shawnee Mart and his later arson. With respect to the Kentucky conviction, McDermott may have made the judgment that any further exploration of Martin's criminal background for impeachment purposes would have been cumulative, knowing as he did that Martin had already admitted to arson, drug use, seven burglaries, and the "wanton endangerment" convictions. Last, McDermott undoubtedly realized that new $100 bills can be obtained from more than one source in southern Illinois, and thus that the bank records were unlikely to be useful. (Indeed, for all we know, McDermott may have worried that other information in the bank records may have hurt Lindsay more than helped her, because they may have reinforced the government's motive evidence.) These points are therefore also without merit.

■ The only way we could assess Lindsay's argument that McDermott should have called certain impeachment witnesses to counter Martin's testimony and Hicks' testimony would be by examining the improper affidavits or other evidence that is not in the record. Furthermore, as we have just noted, Martin was thoroughly impeached in any event. McDermott may have refrained from impeaching Hicks by implying that the owner of his building might have set the fire (which

is the gist of the inadmissible affidavit) out of a concern that he not inadvertently make Hicks even more sympathetic as a potential victim of his own landlord. The strong *Strickland* presumption that trial counsel had good reasons for strategic decisions, such as which impeachment witnesses to call, dooms Lindsay's argument here.

■ Next, Lindsay argues that McDermott was ineffective because he did not object to Pipkins' testimony that Lindsay had offered him $5,000 to burn down the store. The basis of her desired objection is not at all clear, however. In her reply brief she says that "trial counsel should have objected on the basis of Rule 404(b) and asked for an immediate limiting instruction on that particular testimony to the effect that it should be considered only for the issue of intent." In other words, Lindsay herself appears to agree that Pipkins' testimony was admissible to show intent under Rule 404(b). In those circumstances, lawyers often make the strategic choice not to request limiting instructions, because they wish to avoid underscoring the troublesome material for the jury. See, *e.g., United States v. Gregory*, 74 F.3d 819, 823 (7th Cir.1996); *Biggerstaff v. Clark*, 999 F.2d 1153, 1155 (7th Cir.1993). Nothing rising (or sinking) to the level of *Strickland* ineffective performance occurred here either.

■ Last, we come to the point Lindsay stressed at oral argument: counsel's failure to object to the prosecutor's comments during closing arguments. We have reviewed each of the ten instances of alleged objectionable argument Lindsay has brought to our attention, and we find nothing even approaching the level of *improper argument* that might have led to a finding of trial error. See, *e.g., United States v. Morgan*, 113 F.3d 85, 90 (7th Cir.1997) (inviting conviction for reasons other than guilt); *United States v. Hartmann*, 958 F.2d 774, 785–86 (7th Cir. 1992) (expressing personal opinion regarding truthfulness of a witness); *United States v. Stillwell*, 900 F.2d 1104, 1112 (7th Cir.1990) (implying possession of information not in evidence that would support credibility of a witness). Even if we had, the question would remain whether any such errors were harmless in light of the trial as a whole. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *United States v. Whitaker*, 127 F.3d 595, 606 (7th Cir.1997). Furthermore, as in the case of Pipkins' testimony, a competent lawyer would make a strategic decision between leaping up and objecting to borderline statements (thereby calling them sharply to the jury's attention) and leaving well enough alone.

Fairly read, none of the prosecutor's remarks appears to us even to have been improper. The lawyer for the government had the habit of inserting words like "I think" or "I believe" into the middle of his sentences, but read as a whole the sentences simply summarized the evidence from the government's standpoint, suggested reasonable inferences from the evidence, or invited the jury to find that the evidence against Lindsay was "overwhelming." On a number of occasions, the prosecutor reminded the jury that it was their recollection of the evidence that counted, and it was their job to assess the credibility of the witnesses. Nothing approaching the improper practices of vouching for the government's witnesses, *Kappos v. Hanks*, 54 F.3d 365, 367 (7th Cir.1995), or otherwise offering prosecutorial testimony in place of argument, *Stillwell*, 900 F.2d at 1112, appears on this record. Last, Lindsay has now withdrawn her complaint concerning the prosecutor's statements about Martin's plea agreement and McDermott's failure to object to those statements—and rightly so, in our view, since the argument was without merit.

Perhaps it is just as well to resolve Lindsay's ineffectiveness argument now, in accordance with her wishes, because it may bring this case to a speedier conclusion. Briefly put, there is nothing on this record that would support a finding that McDermott's performance was inadequate under the *Strickland* standard, and we thus have no reason to reach the question whether any arguable errors he may have made prejudiced Lindsay's case. The judgment of the district court is hereby AFFIRMED.