In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2924

TODD E. PETERSON,

*Petitioner-Appellant*,

*v.*

TIMOTHY DOUMA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 10-C-0132 — **Patricia J. Gorence**, *Magistrate Judge.*

ARGUED OCTOBER 29, 2013 — DECIDED MAY 6, 2014

Before WOOD, *Chief Judge*, and KANNE and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Todd Peterson appeals from the denial of his petition for a writ of habeas corpus challenging his conviction in Wisconsin state court for sexual assault of a child. His petition raised multiple challenges to the conviction, but we granted a certificate of appealability as to only one: whether his trial attorney's failure to move to suppress a statement Peterson made to an off-duty police officer deprived him of his

Sixth Amendment right to counsel. See 28 U.S.C. § 2253(c). We conclude that the state court did not unreasonably apply the clearly established law of *Strickland v. Washington*, 466 U.S. 668 (1984), in evaluating counsel's performance. Reasonable jurists could disagree as to application of both the performance element and the prejudice element of the *Strickland* standard. We therefore affirm the district court's denial of Peterson's petition. Along the way, we explain the proper procedure for requesting amendments to a certificate of appealability.

I.   *Factual and Procedural Background*

A Wisconsin jury convicted Todd Peterson of first degree sexual assault of a child. See Wis. Stat. § 948.02(1)(e). The jury heard testimony from Peterson's victim, a ten-year-old boy we will call M.W. The boy testified that when he was seven years old he had slept over at Peterson's house while his mother was away at a church retreat, and that on that occasion Peterson had abused him sexually. Although he regularly saw Peterson after that, M.W. kept the abuse a secret for more than a year. M.W. finally unburdened himself to two friends and his older sister one day while Peterson was at the boy's house.

The children brought the story to Trisha Liethen, an off-duty police officer who was also at the house volunteering as a mentor to M.W.'s sister through the Big Brothers Big Sisters program. In her trial testimony, Liethen described calling Peterson up from the basement and confronting him with the story, which she assumed had taken place recently. Instead of appearing surprised or denying the allegation, Peterson corrected her by saying, "that wasn't when that happened." At that point Liethen told him to stay put and called the police.

The government also presented indirect evidence of Peterson's guilt. M.W.'s two friends, his older sister, and his mother all gave their accounts of the day M.W. came forward, corroborating the details of the boy's testimony. In addition, the court allowed the jury to hear "other acts" evidence concerning three underage girls whom Peterson had abused in the past under similar circumstances. See Wis. Stat. § 904.04(2). The jury was twice instructed to consider this evidence only for purposes of establishing motive, opportunity, intent, and absence of mistake. (No such instruction would be required today; Wisconsin has since amended § 904.04(2) to allow other acts evidence to show propensity in criminal prosecutions for sexual assault. 2005–2006 Wis. Legis. Serv. 310 (2005 A.B. 970) (West). Cf. Fed. R. Evid. 414.) Peterson did not testify in his own defense and did not call any witnesses. The jury returned a guilty verdict. Because of his multiple past offenses, Peterson was sentenced to life in prison without possibility of parole.

Peterson recruited a new lawyer and pursued post-conviction relief in state court. He claimed his trial counsel had been ineffective and that the other-acts evidence was improperly admitted. The trial court held an evidentiary hearing and denied relief. The state appellate court affirmed that decision as well as Peterson's conviction. After unsuccessfully petitioning the Wisconsin Supreme Court for review, Peterson—now acting *pro se*—filed a petition for a writ of habeas corpus in federal court under 28 U.S.C. § 2254. The district court denied his petition and denied him a certificate of appealability. Peterson appealed anyway, which we construed as a request for a certificate. See Fed. R. App. P. 22(b)(2). A judge of this court granted the certificate on the ground specified below.

The statute governing habeas relief requires a prisoner who seeks to appeal a district court's denial of his petition first to obtain a certificate of appealability by making "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The prisoner need not show he is likely to prevail, but he must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), following *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983); *Jones v. Basinger*, 635 F.3d 1030, 1039–40 (7th Cir. 2011).

If granted, the certificate will explain "which specific issue or issues satisfy the showing required." § 2253(c)(3). In this case, the certificate granted to Peterson stated that he had made a sufficient showing that his Sixth Amendment right to counsel was violated when his trial attorney did not seek suppression of Peterson's incriminating statement to Liethen that "that wasn't when that happened." The certificate further instructed the parties to "address, along with any other matters counsel deems advisable, whether the Wisconsin court unreasonably concluded that Peterson was not in custody despite the officer's direction that he remain on the scene until the arrival of on-duty officers." We appointed counsel to represent Peterson in this appeal.

II.  *Analysis*

Our consideration of Peterson's habeas petition proceeds in two steps. We first clarify the issue properly before us in this appeal. We then review the district court's conclusion that the state court's adjudication of that issue did not involve an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1). We review *de novo* the district court's denial of the petition. *Harris v. Hardy*, 680 F.3d 942, 948 (7th Cir. 2012).

A.  *The Certificate of Appealability*

Peterson's habeas corpus petition raised a host of claims, including six separate grounds for ineffective assistance of counsel. We found the required substantial showing as to only one issue: whether trial counsel's failure to move to suppress Peterson's statement to Liethen violated his Sixth Amendment rights. In this appeal, however, Peterson's attorney has briefed not only that claim but also two additional theories of ineffective assistance of counsel, as well as a stand-alone due process claim based on the admission of other-acts evidence.

Although not strictly required by the plain text of § 2253, we have repeatedly said that an appeals panel will decide the merits of only those issues included in the certificate of appealability. E.g., *Bolton v. Akpore*, 730 F.3d 685, 698 (7th Cir. 2013); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000) ("without an expansion of the certificate by this Court, we are not required to and will not address" additional issues). Nor does opposing counsel need to address uncertified issues. E.g., *Schaff v. Snyder*, 190 F.3d 513, 528 n. 16 (7th Cir. 1999); *Sylvester v. Hanks*, 140 F.3d 713, 715 (7th Cir. 1998). Even the

petitioner's own attorney does not have to pursue uncertified issues at the petitioner's demand, provided the attorney has independently evaluated their merits. *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011).

Peterson reads the certificate we granted to encompass all four of the issues he has raised, relying on its instruction that the parties address, "along with any other matters counsel deems advisable," the Wisconsin court's finding that Peterson was not in custody. The quoted aside cannot support the weight Peterson places on it. That language immediately followed our statement that Peterson had made a substantial showing of a Sixth Amendment violation "when his defense attorney at trial failed to move to suppress Peterson's state-ment." That was the issue certified for appeal. The additional comment was a directive to both parties, in arguing the certified issue, to address whether Liethen's command to Peterson meant he was in police custody, as well as any other points relevant to the suppression issue. See *Fountain*, 211 F.3d at 433 (similar language in a certificate of appealability could not be read as giving counsel free rein to raise unrelated arguments). In context, the passage was not an invitation to revive uncertified issues.[1]

---

[1]   Although Peterson does not raise the point, ineffective assistance of counsel is a single claim no matter the number of attorney errors it is based on. See *Peoples v. United States*, 403 F.3d 844, 847–48 (7th Cir. 2005); *Duarte v. United States*, 81 F.3d 75, 77 (7th Cir. 1996). A petitioner in Peterson's position might therefore argue that in certifying one theory of ineffective assistance we opened the door to all others. The language of § 2253, however, speaks of certifying "issues" rather than "claims," and our cases

(continued...)

This does not mean that a petitioner is foreclosed from ever pursuing additional issues on appeal. The petitioner may ask the court to amend the certificate of appealability before briefing begins. See *Thompson v. United States*, 732 F.3d 826, 831 (7th Cir. 2013), quoting *Lavin*, 641 F.3d at 832 (counsel "should not simply brief the additional claims, but should first request permission to do so"). This procedure clarifies the issues under review, alerts appellees to the arguments they must answer, and saves both parties and the court from extensive treatment of meritless claims or unnecessary rounds of supplemental briefing. Nor will it erode the certificate's role as "a screening device, helping to conserve judicial (and prosecutorial) resources." *Young v. United States*, 124 F.3d 794, 799 (7th Cir. 1997). Where at least one issue has already been certified, the additional burden of (re)considering whether the petitioner has made a sufficient showing of another constitutional error will usually be modest. Cf. *Ramunno v. United States*, 264 F.3d 723, 725 (7th Cir. 2001) ("If the case presents a substantial constitutional question, then an independently substantial statutory issue may come along for the ride.").

We have in the past considered amending certificates of appealability when asked to do so in the parties' briefs—even when a party makes such a request only implicitly, by simply arguing additional issues. See *Ouska v. Cahill-Masching*,

---

[1] (...continued)

treat separate theories of ineffective assistance as separate issues for purposes of § 2253. See, e.g., *George v. Smith*, 586 F.3d 479, 483 (7th Cir. 2009); *Cosby v. Sigler*, 435 F.3d 702, 708 (7th Cir. 2006); *Rittenhouse v. Battles*, 263 F.3d 689, 692–93 (7th Cir. 2001); *Fountain*, 211 F.3d at 432–33.

246 F.3d 1036, 1045 (7th Cir. 2001) (collecting cases). But we have typically shown such flexibility in cases where special circumstances justified departing from best practices, such as those "rare instances where the importance of an issue does not become clear until later in an appellate proceeding," *id*. at 1046, or where a prisoner's brief is filed *pro se*, see *Lavin*, 641 F.3d at 832; *Williams v. Parke*, 133 F.3d 971, 975 (7th Cir. 1997), or for the convenience of the court and litigants, see *George v. Smith*, 586 F.3d 479, 483 (7th Cir. 2009) (certificate amended to better frame petitioner's constitutional claim); *Rodriguez v. Scillia*, 193 F.3d 913, 920–21 (7th Cir. 1999) (court considered uncertified issue to avoid future successive appeals). We can imagine other situations where it might be necessary to consider modifying a certificate after briefing is already underway; unfairness to the appellee could be remedied in such instances by inviting supplemental filings. But our recent cases underscore that these exceptions should not supplant the usual rule that counsel should ask for an expanded certificate before briefing additional issues. E.g., *Bolton*, 730 F.3d at 698; *Lavin*, 641 F.3d at 832.

Peterson raised three uncertified issues in his opening brief, in addition to the one for which we granted a certificate of appealability. The state responded only to the certified issue. In his reply brief, Peterson asks that we treat his opening brief as a request to amend the certificate. We do not know why in this case the request was not made sooner, but because it is at least arguable that the language of the certificate we issued to Peterson was not sufficiently clear as to the issues under review, we consider whether any of his additional issues should be certified.

The standard Peterson must meet to warrant amending the certificate differs depending on whether the district court resolved the claim on the merits or on procedural grounds. Where the district court reached the merits, Peterson need only show that "reasonable jurists" would find the court's assessment "debatable or wrong." *Slack v. McDaniel*, 529 U.S. at 484. Where the claim was dismissed on procedural grounds, we will certify an issue only when the proverbial reasonable jurist would find both the district court's procedural decision and the merits of the claim debatable. *Id.*

We begin with the two issues the district court considered on the merits. Peterson argues that his counsel was ineffective for choosing not to cross-examine Liethen about the incriminating statement. Under the clearly established standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must show that his counsel's performance was unreasonable and that the deficient performance prejudiced his defense. Peterson argues that his counsel's decision not to press Liethen on her testimony—for example, by clarifying whether she understood Peterson's statement to be a confession—fell below a reasonable level of performance. The state court concluded that it was a valid trial strategy for Peterson's attorney to choose not to emphasize the statement any further before the jury by giving a former police officer an opportunity to explain it. See *United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008) ("deciding what questions to ask a prosecution witness on cross-examination is a matter of strategy"); *United States v. Fish*, 34 F.3d 488, 494 (7th Cir. 1994); cf. *United States v. Lindsay*, 157 F.3d 532, 536 (7th Cir. 1998) (lawyers often make reasonable strategic choice not to request limiting instructions so as

"to avoid underscoring the troublesome material for the jury"). We agree, and on that basis we conclude that Peterson has not made a substantial showing of constitutional deprivation on this issue.

Peterson also claims that his counsel rendered ineffective assistance by not challenging the indictment's six-month window for the charged crime. That long period, he argues, prevented him from putting on an alibi defense based on a five-day trip he took to Texas around the time of M.W.'s eighth birthday. (M.W. reported that the abuse had occurred about two weeks before that birthday.) Even assuming that this conduct was unreasonable, Peterson cannot show he was prejudiced by the inability to present a paper-thin alibi. This was not a case of mistaken identity, and there was no dispute that M.W. had spent the night at Peterson's. A defense asserting that Peterson was out of state on the night in question would have had to overcome the testimony of numerous witnesses that Peterson had been at home with M.W. It would also have had to account for the signed statement Peterson gave police that M.W. had spent that night with him and that the two had shared a bed. This issue should not be certified.

The third and last of Peterson's uncertified arguments is that the admission of other-acts evidence at trial violated his due process right to a fair trial under the Fourteenth Amendment. The district court denied this claim on procedural grounds, finding that Peterson had defaulted it by failing to raise it in state court. Peterson did object to the evidence, but he did so entirely on the basis of state evidence law. See Wis. Stat. § 904.04. Peterson never raised a constitutional due process argument in state court, either explicitly or by relying

on facts and/or case law that should have put the state court on notice as to the federal constitutional nature of his claim. See *Verdin v. O'Leary*, 972 F.2d 1467, 1473–74 (7th Cir. 1992).

Nor has Peterson made a substantial showing that his constitutional claim has merit. The trial court allowed the other-acts testimony after an extensive pre-trial hearing in which it excluded evidence concerning one of Peterson's past victims as insufficiently probative but ruled admissible the evidence about three other victims. The judge twice gave the jurors limiting instructions as to the proper use of the evidence. Even at this stage of the proceedings, Peterson has pointed to no clearly established federal law that the state court applied unreasonably. As we said in a similar case, because Peterson "has identified no Supreme Court precedent the courts of the State of Wisconsin may have applied unreasonably in permitting the admission of prior bad act evidence against him, relief must be denied as to the claim." *Hammer v. Karlen*, 342 F.3d 807, 811 (7th Cir. 2003).

Peterson has not made the required showing for the three uncertified issues he has briefed on this appeal. We therefore decline to amend the certificate of appealability.

B. *Peterson's Certified Issue*

We turn then to the sole issue certified for appeal: whether Peterson's lawyer rendered ineffective assistance by failing to move to suppress his statement to Leithen that "that wasn't when that happened." Under 28 U.S.C. § 2254(d)(1), our review is limited to deciding whether the state court's resolution of this issue unreasonably applied the *Strickland* analysis to Peterson's claim.

Peterson argues that his attorney should have tried to suppress his incriminating statement under *Miranda v. Arizona*, 384 U.S. 436 (1966), on the ground that he made it during custodial interrogation. Liethen was a police officer when these events unfolded (she later retired on disability), but on the day in question she was at M.W.'s house in her role as a volunteer Big Sister. Peterson claims that because he knew at the time that Liethen was a police officer, and because she directed him to come up from the basement, he was in custody throughout the conversation and his attorney should have moved to suppress. The state court disagreed, finding that Peterson was not in custody when Liethen confronted him and therefore that his attorney had not acted unreasonably. The court added that Peterson was not prejudiced because the trial judge later said that he would have denied such a suppression motion.

Contrary to the state court's analysis, "the *Strickland* prejudice inquiry is an objective one" and cannot rest solely on the trial judge's say-so. *Bailey v. Lemke*, 735 F.3d 945, 950 (7th Cir. 2013); see also *Strickland*, 466 U.S. at 695 (prejudice inquiry "should not depend on the idiosyncracies of the particular decisionmaker"); *Harris v. Thompson*, 698 F.3d 609, 648 (7th Cir. 2012) (granting habeas relief based on ineffective assistance; state court improperly relied on trial judge's statement that greater diligence by counsel would not have changed his mind).

Despite the state court's mistaken reasoning, our role in this appeal is limited to asking "whether reasonable jurists could disagree with the state court's *conclusion*, not whether they could disagree over its *reasoning*." *McNary v. Lemke*, 708 F.3d

905, 920 (7th Cir. 2013); see also *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) ("The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Under this standard, we cannot say that the state court reached an unreasonable conclusion in applying *Strickland* to the facts of this case.

Whether a suspect is in custody is decided based on objective standards. The issue is whether, under all the circumstances surrounding the interrogation, a reasonable person would have felt free to leave. *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012). The totality of circumstances here did not suggest that Peterson's statement was made under custodial interrogation. Although Peterson knew Liethen was a police officer, she was off-duty and out of uniform at the time of their conversation. Unlike the off-duty officer in *Wilson v. O'Leary*, 895 F.2d 378, 379–80 (7th Cir. 1990), on which Peterson relies, Liethen did not display her badge, draw her weapon, or take any other action that would have led Peterson to believe she was acting in her role as a police officer rather than as a private citizen. Liethen told him (we will assume quite sternly) to come up from the basement and then told him what she had just heard from the children. These were the actions of a responsible adult, and we agree with the state court that Peterson was not in custody simply because he knew that Liethen was a police officer.

The fact that Liethen told Peterson not to leave after he made his incriminating statement does not alter the character of their earlier exchange, even if Liethen's command might have meant that Peterson at that point was in custody. See

*Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) (statements suspect makes without *Miranda* warnings before being taken into custody are admissible). Nor did Liethen say anything else to Peterson to elicit any further response. The beginning of custody, assuming it was that, marked the end of interrogation and thus the end of Peterson's potential argument for suppression.

Despite our doubts that the evidence should have been suppressed, we are less certain than was the state court that the lawyer's decision not to move to suppress was a reasonable strategy. The "Sixth Amendment does not require counsel … to press meritless arguments before a court," *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993), and it is always good strategy to avoid wasting time or the court's attention with claims that are going nowhere. Peterson's claim lay somewhere north of meritless. Confronted with a client who made an incriminating statement to a police officer without receiving *Miranda* warnings, another lawyer might well have filed a motion to suppress despite the fact that Liethen was off duty and did not physically restrain Peterson's movement. Cf. *Gentry v. Sevier*, 597 F.3d 838, 851 (7th Cir. 2010) (state court unreasonably applied *Strickland* where attorney's failure to seek suppression of evidence seized during an obviously unconstitutional search and seizure was "beyond the pale of an objectively reasonable strategy"). Nevertheless, given the weakness of this particular suppression claim, we cannot say that the state court unreasonably applied *Strickland* in evaluating the performance of Peterson's attorney.

That weakness, along with the other direct evidence against Peterson, also means that Peterson cannot show that his attorney's decision not to file the motion prejudiced his defense. Prejudice here means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; see also *Harris*, 698 F.3d at 645–46 (granting habeas relief requires finding not only that attorney error changed outcome but that state court's conclusion otherwise was unreasonable). Even if the statement had been suppressed, it is difficult to conclude that it would have changed the outcome of the trial given the account M.W. gave on the witness stand and the testimony of so many corroborating witnesses.

Evaluating the sole issue certified for appeal under the standard set out in 28 U.S.C. § 2254, we cannot say that the state court unreasonably applied *Strickland* to the decision of Peterson's trial counsel not to seek suppression. The judgment of the district court is AFFIRMED.