In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1600

SAMUEL MORELAND,

*Petitioner-Appellant,*

*v.*

CHERYL EPLETT, Warden

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:16-cv-00379 — **Pamela Pepper**, *Chief Judge.*

ARGUED SEPTEMBER 15, 2021 — DECIDED NOVEMBER 15, 2021

Before BRENNAN, SCUDDER, and St. Eve, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Samuel Moreland argues his federal habeas corpus petition was erroneously dismissed when the district court concluded that the petition was time barred and circumstances did not warrant equitable tolling. But Moreland's arguments either fall short of the relevant legal and equitable standards or fall outside the scope of the certificate of appealability. So, we affirm the district court's denial of habeas relief.

**I**

Moreland was convicted in Wisconsin state court of first-degree reckless homicide by delivery of a controlled substance. He received a sentence of 10 years' initial confinement followed by 10 years' extended supervision. Moreland unsuccessfully appealed his case, *State v. Moreland*, 839 N.W.2d 616 (Wis. 2013), and on August 11, 2013, his direct review ended when the opportunity to file a petition for writ of certiorari in the United States Supreme Court expired. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), he had one year from that date to file a petition for writ of habeas corpus in federal district court. 28 U.S.C. § 2244(d)(1).

Moreland moved for collateral postconviction relief in Wisconsin state court on July 30, 2014, 353 days after direct review of his conviction concluded. This process ended on March 7, 2016, when the Wisconsin Supreme Court denied Moreland's petition for review. *State v. Moreland*, 885 N.W.2d 377 (Wis. 2016). For purposes of his later federal habeas petition, all 586 days of the state postconviction process were tolled. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").

Next, Moreland filed a habeas petition in the Eastern District of Wisconsin on March 28, 2016, 21 days after the conclusion of his state postconviction review. At this point, a total of 374 untolled days had elapsed since the end of Moreland's direct review. Moreland's federal habeas petition raised six constitutional claims related to due process, the ineffective assistance of counsel, the right to confrontation,

and the right to a fair and impartial jury. The State of Wisconsin moved to dismiss, arguing the petition was untimely. Moreland responded that the time for filing his petition should be equitably tolled because he suffered from schizophrenia, and on several occasions he was unable to research his case due to lack of access to the prison library.

The district court granted the State's motion to dismiss, concluding that the petition was filed nine days after the one-year statute of limitations elapsed. Nevertheless, the court granted a certificate of appealability "on the issue of equitable tolling":

> While this court does not believe that the petitioner has demonstrated extraordinary circumstances or reasonable diligence to warrant equitable tolling, the court supposes that his allegations about his schizophrenia and the various institutional barriers to timely filing could persuade a reasonable jurist to debate whether to apply the doctrine of equitable tolling and allow his untimely petition.

Moreland appealed and filed a motion requesting the appointment of counsel and an expert.

On August 24, 2020, this court issued an order granting Moreland's request for counsel and denying his request for an expert without prejudice. That order acknowledged that the district court's certificate of appealability failed to "identify a constitutional issue." The order then indicated Moreland raised "at least two substantial constitutional claims"— Moreland's right to confrontation, as well as "numerous theories of ineffective assistance of counsel."

Moreland presents three arguments to us. First, he contends the district court should have tolled the time connected with the motion for postconviction discovery filed on September 23, 2013, and the motion for reconsideration filed on October 10, 2013. Second, he says the district court abused its discretion when it did not equitably toll the time to file his habeas petition. Third, he argues this court should remand with instructions to appoint counsel and conduct an evidentiary hearing regarding the impact of schizophrenia and the other circumstances on his ability to meet the one-year statute of limitations.

## II

Before we reach the merits of Moreland's claims, we consider the district court's certificate of appealability. The State argues that certificate fails to indicate a specific issue for which Moreland made a "substantial showing of the denial of a constitutional right." In the alternative, the State claims Moreland's timeliness and appointment-of-counsel arguments exceed the scope of the certificate.

## A

We initially examine the statutory bases for the certificate of appealability. As always, we begin our analysis with the text. In relevant part, the statute states:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court … .

…

> (2) A certificate of appealability may issue un-
> der paragraph (1) only if the applicant has
> made a substantial showing of the denial of
> a constitutional right.
>
> (3) The certificate of appealability under para-
> graph (1) shall indicate which specific issue
> or issues satisfy the showing required by
> paragraph (2).

28 U.S.C. § 2253(c).

These statutory provisions create the framework by which we evaluate Moreland's appeal. Section 2253(c)(1) states that "until a [certificate of appealability] has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Gonzalez v. Thaler*, 565 U.S. 134, 143 (2012) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). It is, in other words, a jurisdictional provision. *See id.* Section 2253(c)(3), on the other hand, has been interpreted by the Supreme Court as a "mandatory but nonjurisdictional rule." *Id.* at 154. The Court has suggested § 2253(c)(2) be interpreted the same. *Id.* at 143. So, per subsection (c)(1) the issuance of a certificate of appealability is a jurisdictional requirement, and per subsections (c)(2) and (c)(3) the certificate's contents and justification are mandatory, but nonjurisdictional.

Also, as we have explained before, subsection (c)(3)'s indication requirement "is directed not at advocates' briefs, but at judges' issuances of certificates of appealability." *Holmes v. Hardy*, 608 F.3d 963, 966 (7th Cir. 2010) (citing *Beyer v. Litscher*, 306 F.3d 504, 505–07 (7th Cir. 2002)). These rules "are

principally designed to save time for the litigants *and* judges." *Davis v. Borgen*, 349 F.3d 1027, 1028 (7th Cir. 2003) (emphasis added) (citations omitted). So, "there is little point in revisiting the question whether a certificate should have been issued," once the briefs are filed. *Id.* (citations omitted). Typically, it makes sense for a court of appeals to entertain a motion to vacate a certificate only when it "is made early enough to produce savings for the litigants." *Id.* (citing *Buie v. McAdory*, 322 F.3d 980, 981–83 (7th Cir. 2003)). Even then, it makes sense for a court to entertain the motion only when the "issuance of the certificate was an obvious blunder, so that the court of appeals need not traverse the same ground twice." *Id.* (citing *Buie*, 322 F.3d at 981–83). But note, there is no "deadline for submitting a motion to vacate the certificate." *Id.*

The procedural history of this case shows the importance of statutory compliance. The first error arose when the district court's certificate of appealability failed to indicate a specific issue for which Moreland made "a substantial showing of the denial of a constitutional right." This statutory requirement is particularly important in cases involving multiple constitutional issues. Moreland's case is one example. As the State argued, neither the litigants nor our court know which of the six constitutional claims—if any—the district court considered substantial.[1]

The errors do not stop there. This court, too, mistook § 2253(c)'s framework. By issuing an order that indicated two substantial constitutional rights, it attempted to complete the district court's certificate itself. But that is not what subsection

---

[1] We thank Moreland's court-appointed counsel for their advocacy on his behalf.

(c) provides. In the past, this court has dismissed cases for this same type of deficiency. *See, e.g.*, *Young v. United States*, 523 F.3d 717, 718 (7th Cir. 2008) (per curiam) (vacating the certificate of appealability because the district court "offered no explanation for its action" and the prisoner had "no constitutional question for appeal, substantial or otherwise"). Although the relevant statutory provision is nonjurisdictional, it is nonetheless mandatory, and we must faithfully comply with it. *Gonzalez*, 565 U.S. at 146.

These initial errors created confusion, which adversely affected the litigation of this appeal. For example, the State first questioned the certificate's deficiency in its response brief. That challenge came only after Moreland incurred significant litigation costs and our court was about to schedule the case for oral argument. Similarly, it was not until Moreland's reply brief that he addressed the certificate's deficiency. This confusion is no surprise given the procedural history. The certificate's deficiency is a threshold question, and this court and the parties would have benefited from a motion at the outset of the appeal.

Each of these mistakes could have been eliminated had the text of § 2253 been followed. As we said before, the statute's indication requirement has special importance in cases with multiple constitutional claims. So we remind ourselves and the district court that the text of the statute must be adhered to when issuing and considering certificates of appealability. Failing to do so creates unnecessary confusion.

We must also determine whether, despite these statutory deficiencies, Moreland's appeal should be considered. Although we often decline to hear cases with deficient certificates, the decision to vacate is ultimately left to our discretion.

*See Davis*, 349 F.3d at 1028. At this stage, vacating the certificate would not produce savings for either the litigants or the judiciary. The parties have already fully briefed the case and presented oral argument. The State could have moved to vacate the certificate before briefing, when it would have been more likely to succeed. Although there is no deadline to submit such a motion, the State raised this argument too late. So, we will consider the merits of Moreland's appeal.

**B**

The next question is the scope of the certificate of appealability.

This court has "repeatedly said that an appeals panel will decide the merits of only those issues included in the certificate of appealability." *Peterson v. Douma*, 751 F.3d 524, 529 (7th Cir. 2014) (citing *Bolton v. Akpore*, 730 F.3d 685, 698 (7th Cir. 2013); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000)). We generally adhere to this approach, although it is not "strictly required by the plain text of § 2253." *Id.*; *see, e.g.*, *Hartsfield v. Dorethy*, 949 F.3d 307, 317 (7th Cir. 2020) (declining to review evidentiary issues outside the scope of the certificate of appealability). As a result, neither petitioner's counsel nor the opposing counsel need "address uncertified issues" in their briefs. *Id.* (citations omitted).

Importantly, a petitioner's counsel is not prohibited from pursuing additional issues on appeal. *Id.* at 529–30. When a lawyer wishes to raise a claim outside the scope of the certificate, counsel "should not simply brief the additional claims, but should first request permission to do so." *Thompson v. United States*, 732 F.3d 826, 831 (7th Cir. 2013) (quoting *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011)). If a petitioner

wishes to expand the certificate's scope, the best practice is to "ask the court to amend the certificate of appealability before briefing begins." *Peterson*, 751 F.3d at 530 (citations omitted). Put simply, petitioner's counsel should request permission to brief an additional issue beforehand, not ask for forgiveness afterward. This procedure "clarifies the issues under review, alerts appellees to the arguments they must answer, and saves both parties and the court from extensive treatment of meritless claims or unnecessary rounds of supplemental briefing." *Id.*

The standard to amend a certificate of appealability varies depending on whether the district court resolved the case procedurally or on its merits. *Id.* If on its merits, the petitioner "need only show that 'reasonable jurists' would find the court's assessment 'debatable or wrong.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 478, 484 (2000)). If on procedural grounds, the court "will certify an issue only when the proverbial reasonable jurist would find both the district court's procedural decision and the merits of the claim debatable." *Id.* at 530–31 (citing *Slack*, 529 U.S. at 484).

At times, we have considered "amending certificates of appealability when asked to do so in the parties' briefs—even when a party makes such a request only implicitly, by simply arguing additional issues." *Id.* at 530 (citing *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001)). These instances have involved special circumstances that justified a departure from best practice. *Id.* Some examples include the "rare instances where the importance of an issue does not become clear until later in an appellate proceeding," *id.* (quoting *Ouska*, 246 F.3d at 1046), "where a prisoner's brief is filed *pro se*," *id.* (citing *Lavin*, 641 F.3d at 832; *Williams v. Parke*, 133 F.3d

971, 975 (7th Cir. 1997)), or "for the convenience of the court and litigants," *id.* (citing *George v. Smith*, 586 F.3d 479, 483 (7th Cir. 2009); *Rodriguez v. Scillia*, 193 F.3d 913, 920–21 (7th Cir. 1999)). But "these exceptions should not supplant the usual rule that counsel should ask for an expanded certificate before briefing additional issues." *Id.* (citations omitted).

Here, the scope of the certificate of appealability is well defined. The district court granted the certificate "on the issue of equitable tolling." That court explained it did so because Moreland's "allegations about his schizophrenia and the various institutional barriers to timely filing could persuade a reasonable jurist to debate whether to apply the doctrine of equitable tolling." Despite this explanation, Moreland now raises two additional issues in his briefs—a timeliness argument, and a request for the appointment of counsel and an evidentiary hearing in the district court. Moreland asks that we construe his opening brief as an implicit request to expand the scope of the certificate to include his timeliness argument. Of note, he does not make this same request for his appointment of counsel or evidentiary hearing arguments. We consider these additional issues first, and then move to the issue described in the certificate of appealability, equitable tolling.

**1**

Moreland claims the district court abused its discretion when it failed to toll the statute of limitations. According to Moreland, the district court misapplied Wisconsin law by including the time associated with his September 23, 2013 motion for postconviction discovery, and his October 10, 2013

motion for reconsideration, in its statute-of-limitations calculation.

We do not expand the scope of the certificate to include Moreland's timeliness argument for several reasons. First, Moreland did not request that we do so until his reply brief, and he made this request only in response to the State's argument that Moreland's opening brief exceeded the certificate's scope. Yet, the State was under no obligation to address the timeliness argument in its response brief. Again, the purpose for requesting permission at the outset is to "clarif[y] the issues under review, alert[] appellees to the arguments they must answer, and save[] both parties and the court from extensive treatment of meritless claims or unnecessary rounds of supplemental briefing." *Peterson*, 751 F.3d at 530. The timing of Moreland's request undermines these purposes.

Second, there are no special circumstances in Moreland's case. He is represented by counsel, and no issue has become clearer throughout the appeal. In other words, there is no circumstance that warrants an exception to the usual rule "that counsel should ask for an expanded certificate before briefing additional issues." *Id.* at 530 (citations omitted).

Third, the district court dismissed Moreland's habeas petition for procedural reasons, holding that it was filed nine days after the statute of limitations expired. We "will certify an issue only when the proverbial reasonable jurist would find both the district court's procedural decision and the merits of the claim debatable." *Id.* at 530–31 (citing *Slack*, 529 U.S. at 484). Neither are debatable here. When the district court determined that Moreland filed his petition nine days late, it

considered how the state court treated both motions. This was the proper analysis and conclusion.

For all these reasons, we do not expand the scope of the certificate to include the timeliness issue "this late in the game." *Hartsfield*, 949 F.3d at 317 (citation omitted). The rationale for our decision here mirrors that for our decision to consider the merits of the appeal. Just as the State waited too long to raise its deficiency argument, Moreland waited too long to request the certificate be expanded. As a result, we will not consider the merits of Moreland's timeliness claim, but we will consider the merits of the equitable tolling issue.

A final note: to his credit, Moreland independently recognized his failure to ask permission to expand the certificate's scope. While we do not grant his request, we acknowledge that in these instances it was better to ask for permission too late than to never ask at all.

**2**

In the alternative, Moreland asks us to remand with instructions to "appoint counsel and conduct an evidentiary hearing on the impact of [his] mental illness (and other circumstances) on his ability to meet the statutory deadline." This request was also absent from the district court's certificate of appealability. Once again, we must determine whether we will expand the certificate's scope. This time we will, and again our decision follows the same logic as our decisions regarding the certificate's deficiency and timeliness issues.

This request first arose when Moreland filed a motion seeking the appointment of counsel and an evidentiary hearing. On August 24, 2020, this court issued an order granting Moreland's request for counsel. At the same time, this court

denied Moreland's request for an expert without prejudice, stating this issue could be left to "later refiling by counsel." Moreland's counsel did not refile a motion seeking the appointment of an expert or an evidentiary hearing but addressed the issues in its opening brief.

This was not the best practice for expanding the scope of the certificate. Nevertheless, we recognize that Moreland may have relied on this court's order indicating constitutional issues and appointing counsel. He should not be faulted for this reliance. Counsel was appointed so Moreland could have better representation and because counsel would "aid our review of the appeal." This topic has been fully briefed and argued before our court, so the scope of the certificate is expanded to include Moreland's request for the appointment of counsel and for an evidentiary hearing in the district court.

## III

Given these decisions on the statutory bases for the certificate of appealability and its scope, we turn to the merits. First, we consider equitable tolling, which the certificate properly indicated. Second, we evaluate Moreland's request for counsel and an evidentiary hearing in the district court, which we have added.

## A

We review the district court's decision that Moreland was not entitled to equitable tolling for an abuse of discretion. *Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) (citing *Mayberry v. Dittmann*, 904 F.3d 525, 530 (7th Cir. 2018)). A petitioner is entitled to equitable tolling only if he proves "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'

and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (emphasis omitted)). We will not apply equitable tolling if the petitioner fails to demonstrate either of these elements. *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) (citing *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255–56 (2016); *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007)). This is a case-by-case decision, guided by case law and precedent. *Holland*, 560 U.S. at 649–50 (citing *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996); *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964)).

*Reasonable Diligence.* A petitioner is entitled to equitable tolling only if he "diligently tried to protect [his] rights." *Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020). Significantly, the "diligence required for equitable tolling purposes is reasonable diligence … not maximum feasible diligence." *Holland*, 560 U.S. at 653 (citations omitted). But "mere conclusory allegations of diligence are insufficient and reasonable effort throughout the limitations period is required." *Mayberry*, 904 F.3d at 531 (citing *Carpenter*, 840 F.3d at 870).

Moreland claims he contacted the clerk's office, the public defender's office, and the district attorney to better understand the statute of limitations. Given his struggle with mental illness, Moreland argues that missing the deadline by only nine days was reasonably diligent. The district court considered these arguments, but noted that all of Moreland's letters—"with the exception of the petitioner's letter to the Milwaukee County District Attorney's office—are dated in 2016." Notably, most of the one-year limitations period (353 days) "ran from August of *2013* through July of *2014*." As the district court noted, Moreland presented "almost no evidence

of what he was doing to pursue his rights from August 2013 to July 2014." Reasonable diligence requires that Moreland prove he diligently tried to protect his rights over time, not just at some points near the end of the limitations period.

There is also reason to conclude that Moreland was mentally competent when he sought state postconviction review. The district court considered this possibility, too. Moreland's August 3, 2014 letter to the Milwaukee County District Attorney's Office, as well as his February 9, 2016 letter to the Clerk of Court for the Eastern District of Wisconsin, show he was aware of the approaching deadline. In these letters, Moreland displays the mental competence to understand the statute of limitations and inquire about it. The district court did not abuse its discretion when it decided that Moreland failed to diligently pursue his rights.

*Extraordinary Circumstances.* An "extraordinary circumstance" is something "beyond the applicant's control, that prevents timely filing; simple legal errors, such as ignorance of the federal deadline, do not suffice." *Perry*, 950 F.3d at 412 (citations omitted). The Supreme Court recently reiterated that this element is met "only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control." *Menominee Indian Tribe of Wis.*, 577 U.S. at 257 (emphasis in original). In this evaluation, a court looks "at 'the entire hand' that [the petitioner] was dealt and use[s] a 'flexible standard that encompasses all of the circumstances that he faced and the cumulative effect of those circumstances' to determine whether they were 'extraordinary' and truly prevented timely filing of his habeas petition." *Carpenter*, 840 F.3d at 872 (quoting *Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014) (internal quotation marks omitted) (citing *Holland*,

560 U.S. at 650)). "[G]arden variety" claims are insufficient. *Id.* (citations omitted). "[C]ommon parts of prison life," taken alone, are also not considered "extraordinary." *Id.* (citation omitted).

Moreland argues his circumstances are extraordinary for two reasons. First, he claims his schizophrenia caused him to lose his "grip on time, day, date and year." We are, of course, sensitive to mental health issues and the burdens they impose on many of the litigants that come before courts. Just so, the record is to be evaluated under the appropriate standard of review. Here, the district court did not abuse its discretion when it decided that Moreland failed to show "how his schizophrenia actually impaired his ability to pursue claims." Medical evaluations as early as October 15, 2013, and as recent as March 3, 2016, described Moreland's schizophrenia as "stable" or even "in Near Complete Remission." And, as discussed above, Moreland's own letters show he knew the statute of limitations would expire. These facts do not support Moreland's claim of an extraordinary circumstance, nor do they show an abuse of discretion.

Second, Moreland argues that institutional barriers created an extraordinary circumstance. He points to five missed library periods, his placement in administrative segregation, and the fact that he missed his legal materials for two weeks while in segregation. Again, we conclude that the district court did not abuse its discretion when it determined that Moreland's situation did not present an extraordinary circumstance. In *Socha*, this court recognized that in an equitable determination, administrative segregation may serve as a "piece of the puzzle," but alone is not enough. 763 F.3d at 685. Most if not all of Moreland's claims appear to be relatively common

prison experiences. In total, they account for a very small percentage of the limitations period. Without further proof, it is difficult to conclude that Moreland suffered more than a few weeks delay, so the district court did not abuse its discretion.

*         *         *

Moreland has failed to show that he diligently pursued his rights and that extraordinary circumstances prevented him from timely filing his petition. Not proving either prong is fatal; Moreland failed to prove both. We hold therefore that the district court did not abuse its discretion when it denied Moreland's request for equitable tolling.

**B**

Finally, we turn to the merits of Moreland's argument for the appointment of counsel and an evidentiary hearing in the district court. The district court has discretion to appoint counsel in a habeas action. *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997). We review the refusal to appoint counsel for abuse of discretion. *Id.* In general, reversal is appropriate "only 'if, given the difficulty of the case and the litigant's ability, [he] could not obtain justice without an attorney, [he] could not obtain a lawyer on [his] own, and [he] would have had a reasonable chance of winning with a lawyer at [his] side." *Howard v. Gramley*, 225 F.3d 784, 794 (7th Cir. 2000) (quoting *Winsett*, 130 F.3d at 281 (internal quotation marks omitted)) (alterations in *Howard*). Likewise, a "hearing is unnecessary where 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Ademiju*, 999 F.3d at 478 (quoting 28 U.S.C. § 2255(b)).

Moreland argues the district court should have appointed counsel and held an evidentiary hearing based on notions of

fundamental fairness, as well as that court's "acknowledgment" that reasonable jurists could differ on the issue of equitable tolling here. But just as important are the arguments Moreland does not make. At no point does he claim the district court failed to weigh a potential extraordinary circumstance due to a mistaken understanding of the law. *See Perry*, 950 F.3d at 410 (citations omitted) (holding that the district court's decision that aphasia could never support equitable tolling was "inconsistent with the law of the circuit"). Nor does he explain how counsel's advice or an evidentiary hearing would have strengthened his case before the district court. Instead, Moreland made coherent legal arguments that the district court considered on their merits. Finally, Moreland's circumstances did not hinder his pursuit of a legal claim, unlike the petitioners in *Perry*, 950 F.3d at 414, and *Schmid v. McCauley*, 825 F.3d 348, 350 (7th Cir. 2016).

No evidence has been presented that the district court abused its discretion as to these two requests, so we affirm its decisions.

## IV

Moreland's case does not warrant equitable tolling because he has not established extraordinary circumstances or proved that he diligently pursued his rights. He also has not shown that he is entitled to an evidentiary hearing or the appointment of counsel. We therefore AFFIRM the judgment of the district court.