In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3656

Anthony D. Taylor,

Petitioner-Appellant,

v.

United States of America,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 98-4207 WLB--William L. Beatty, Judge.

Argued April 1, 2002--Decided April 25, 2002


   Before Easterbrook, Diane P. Wood, and
Evans, Circuit Judges.

   Easterbrook, Circuit Judge.  Anthony
Taylor is serving 360 months'
imprisonment for distributing crack
cocaine. After we affirmed his conviction
and sentence, see United States v.
Taylor, 116 F.3d 269 (7th Cir. 1997), he
filed a collateral attack under 28 U.S.C.
sec.2255. Of the grounds that Taylor
presented to the district judge, only one
survived to this appeal: a contention
that counsel failed to inform him point
blank not only that he was entitled to
testify at his trial (he did not take the
stand) but also that he alone held the
power to decide. Lawyers make many of the
strategic and tactical decisions at
trial, but this decision lies in the
hands of the defendant personally. See
Rock v. Arkansas, 483 U.S. 44 (1987);
United States v. Curtis, 742 F.2d 1070,
1076 (7th Cir. 1984). Taylor contends
that, even if he knew that he could
testify, and even if he actually made the
decision, he is entitled to a new trial
unless either the judge or his lawyer
relayed that information in unmistakable
language. Taylor contends that the advice
should be delivered by the judge and a
waiver elicited in open court, but he
will settle for delivery by defense
counsel.

In the district court Taylor filed two affidavits and his trial counsel one. The district court declined to hold an evidentiary hearing, writing: "Although there are conflicting affidavits of [Taylor] and his attorney in the record before the court, the court finds that the ultimate decision not to testify was one made by [Taylor], after consultation with his attorney." On the basis of this "finding" the district court denied the petition. There are two problems with that approach. The first is that, if the record contains an evidentiary conflict on a material issue of fact, a judge must hold an evidentiary hearing to decide who is telling the truth. It is not sound to say that, in every conflict between a prisoner and a lawyer, the lawyer must be believed. Second, the district court's conclusion--that "the ultimate decision not to testify was one made by" Taylor-- does not respond to his legal theory. What Taylor argues is that even if he made the decision, he is entitled to a new trial unless he received formal notice and waived his right to testify, preferably on the record in open court.

After denying Taylor's petition, the district court issued a certificate of appealability "on the issue of whether this court should have conducted an evidentiary hearing on [Taylor's] claim that counsel was constitutionally ineffective" for failing to provide adequate advice. This does not comply with 28 U.S.C. sec.2253(c)(1)(B)(2), which says that a certificate "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Subparagraph (3) requires the certificate to identify the issue about which the substantial showing has been made. Whether a court must hold an evidentiary hearing is a question about how courts resolve collateral attacks, not about constitutional law. It may be presented incident to a substantive decision, if a substantial showing has been made, see Slack v. McDaniel, 529 U.S. 473, 483-85 (2000), but the district court did not find that Taylor's theory is substantial. As is common, the prosecutor ignored this shortcoming, forfeiting any entitlement to dismissal of the appeal for noncompliance with sec.2253(c)(1)(B). See Ramunno v. United States, 264 F.3d 723 (7th Cir. 2001); United States v.

Marcello, 212 F.3d 1005 (7th Cir. 2000). After one round of briefing, a panel of this court implicitly amended the certificate of appealability, directing the parties to address several issues related to the merits and application of the harmless-error doctrine.

The second round of briefs devotes considerable attention to the question whether Underwood v. Clark, 939 F.2d 473 (7th Cir. 1991), is consistent with notice pleading. See Swierkiewicz v. Sorema N.A., 122 S. Ct. 992 (2002). We said in Underwood that to obtain an evidentiary hearing on a theory that counsel prevented him from testifying in his own defense, a prisoner waging a collateral attack must be specific in his affidavits; generalities (such as his impression of what happened, rather than exactly what counsel said) will not suffice. Taylor sees his loss in the district court as an application of Underwood and asks us to overrule that decision as inconsistent with Swierkiewicz and other opinions deprecating heightened pleading requirements. See, e.g., Leatherman v. Tarrant County, 507 U.S. 163 (1993). This is a puzzling request, if only because Taylor does not contend that his lawyer "prevented" him from testifying; his argument is that counsel did not go through a Miranda-like advice-and-waiver formula. No one argues that Underwood deems an affidavit of the sort "counsel never, ever said X" to be insufficient, if the Constitution requires the lawyer to say the magic word X.

Taylor's position is doubly puzzling because neither Underwood nor this case was decided at the pleading stage. Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts is the closest parallel to Fed. R. Civ. P. 8, which creates a notice-pleading system for civil litigation. Rule 2(b) departs from Rule 8 by requiring some fact pleading. (It says that a motion "shall specify all the grounds for relief which are available to the movant and of which he has or, by the exercise of reasonable diligence, should have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified.") What is more, the district judge did not deny Taylor's motion at the pleading stage; he

received affidavits from both sides and then determined, by parallel to Fed. R. Civ. P. 56, that no disputed issue of material fact calls for an evidentiary hearing. Pleadings are irrelevant at the summary judgment stage. Fed. R. Civ. P. 56(e). Once the affidavits and other materials are on file, the question is not what the pleadings say but what the evidence shows. Underwood holds that to create a material dispute the evidence at the collateral-attack analog to summary judgment must be specific. This has nothing to do with notice pleading, so Swierkiewicz and like cases would not call for a reassessment of Underwood's holding even if Rule 2 were identical to Rule 8--which it is not.

But it is not Underwood that sinks Taylor's claim. His problem is that a notice-and-waiver regimen is unnecessary. There may be a factual dispute about whether counsel told Taylor in so many words that the accused alone makes the decision whether to testify, but this dispute is not material. We held in Liegakos v. Cooke, 106 F.3d 1381, 1386 (7th Cir. 1997), that the Constitution does not require the judge to tell the accused in open court that he is entitled to testify, and to obtain a formal waiver of this right. See also United States v. Manjarrez, 258 F.3d 618, 623-24 (7th Cir. 2001); United States v. Thompson, 944 F.2d 1331, 1345 (7th Cir. 1991). Nor does the Constitution require an attorney to provide this advice in some prescribed formula. What Rock holds is that the accused may not be prohibited from testifying--not by a judge, not by a lawyer. So if a defendant's theory were that he told his lawyer that he wanted to testify, but that his lawyer refused to allow this (for example, flatly refused to call his client to the stand without suggesting the possibility, if he thought that his client's testimony would be perjury, that he could withdraw and allow the accused to represent himself, see Nix v. Whiteside, 475 U.S. 157 (1985)), this would be a sound constitutional claim. Yet Taylor does not contend that he told his lawyer that he wanted to testify and that counsel frustrated this objective, or even that he was ignorant of his right to testify. To the contrary, Taylor's affidavits show that he discussed this possibility with counsel and decided not to testify after counsel pointed out the

risks. There were many, not only the certainty of impeachment with prior convictions of which the jury otherwise would not learn but also exposure to a two-level increase in offense severity for obstruction of justice (if the judge should conclude that the testimony was materially false), see United States v. Dunnigan, 507 U.S. 87 (1993), and the rule that counsel must alert the court to any known falsehoods in his client's testimony, see Nix, 475 U.S. at 166-71. For someone in Taylor's position, two extra levels for obstructing justice could have increased his sentence from 360 months to life in prison.

Nothing in the Constitution (or any decision of the Supreme Court) justifies meddling with the attorney-client relationship by requiring advice to be given in a specific form or compelling the lawyer to obtain a formal waiver. Dealings between lawyer and client are supposed to be confidential from the government, not to be regulated by the state with an accompanying duty of oversight. Undue formality might undermine confidence between an accused and his client--either directly or through the effect of counsel's belief that whatever was said or done would become the subject of a judicial inquiry, such as the one Taylor wants the district court to conduct. Perhaps a statute or rule could require warnings and waivers despite these costs, but no such statute or rule is on the books. The Constitution of its own force does not require them. Advice of rights and formal waivers are not essential to voluntary decisions. See, e.g., Ohio v. Robinette, 519 U.S. 33 (1996); Schneckloth v. Bustamonte, 412 U.S. 218 (1973).

Counsel may deem it prudent to put waivers on the record. In some state and federal courts defense counsel regularly inform the judge (outside the jury's presence) that the possibility of the accused's testifying has been discussed, and that the accused personally has decided not to take the stand. Putting this information on the record may avoid later collateral attacks, but the Constitution does not command all potentially prudent steps. (Having this process initiated by counsel avoids the risk, discussed in Liegakos and other cases, that a judge-initiated inquiry

will interfere with the attorney-client relationship.)

Taylor's affidavits (which we accept as true, given the posture of the case) tell us that counsel (1) pointed out the risks of testifying, and (2) did not specifically tell Taylor that the decision whether to testify was Taylor's alone. The first of these is some distance from a lawyer's action to impede the defendant from testifying, and the second does not identify a legal shortcoming. Perhaps Taylor's best theory would have been that counsel furnished ineffective assistance by neglecting to discuss with him the advantages of testifying. Whether there were any advantages is unclear on this record--as is the question whether counsel covered that subject in discussions with Taylor-- but it is not necessary to hold an evidentiary hearing to explore that subject. The brief filed by Taylor's appellate counsel does not make an ineffective-assistance argument. Taylor's initial pro se brief (filed before we recruited counsel to assist him) does advert to an ineffective-assistance theory, but he does not contend that additional facts that could be developed at a hearing would demonstrate advantages from testifying to which an attorney should have alerted his client. Nothing we have seen (and nothing in Taylor's affidavits and brief) suggests that counsel's advice not to testify was anything less than the best professional assistance.

Affirmed