NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 28, 2007
Decided March 12, 2007

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 06-1915

| | |
|---|---|
| JOVAN ALEXANDER, a.k.a.<br>CEDRIC WALLS,<br>    *Petitioner-Appellant,* | Appeal from the United States<br>District Court for the Western<br>District of Wisconsin. |
| *v.* | No. 05 C 623 |
| UNITED STATES OF AMERICA,<br>    *Respondent-Appellee.* | John C. Shabaz,<br>*Judge.* |

**O R D E R**

A jury found Jovan Alexander[1] guilty of distributing over five grams of crack cocaine, 21 U.S.C. § 841(a)(1), and the district court sentenced him to 300 months' imprisonment. Alexander subsequently filed a motion under 28 U.S.C. § 2255, claiming that his trial counsel was ineffective. The district court denied his motion, but we granted a certificate of appealability limited to the theory that Alexander's

---

[1] Although the probation officer discovered during her presentence investigation that the appellant's real name is Cedric Walls, we will refer to him as Jovan Alexander throughout this order because that is the name used throughout his trial, in all of the orders issued by the district court and our court, and by both parties in their briefs on appeal.

counsel prevented him from testifying on his own behalf at trial. We now affirm the district court's decision.

During Alexander's jury trial, the government presented several witnesses. Darren Hynek, an agent with the Wisconsin Department of Justice, testified that he met Alexander while investigating Shannon Hughes, a known drug dealer, in La Crosse, Wisconsin. Hynek, who was working undercover at the time, arranged to buy cocaine from Hughes on January 3, 2003. That day, Hynek said, Alexander and another man, Joey Atwell, escorted Hynek from a gas station to Hughes's apartment to complete the transaction. While Hynek waited in his car for Hughes to bring out the drugs, Alexander went inside the apartment and then returned to inform him that Hughes was still bagging "it" up, which Hynek understood to mean crack. Hynek left, but returned later that day and received 14.71 grams of crack from Hughes. Another witness, Detective Marion Byerson of the La Crosse Police Department, testified that, while conducting surveillance of a number of controlled drug transactions between December 30, 2002, and January 7, 2003, he observed Alexander "on several occasions" come and go from 430 North Tenth Street, the home in which investigators believed Hughes was staying. Byerson also observed Alexander speak with confidential informants during two of the police department's controlled drug transactions.

Investigator Mike Blokhuis and Sergeant Cary Joholski, both from the La Crosse Police Department, also testified at Alexander's trial. Blokhuis recounted that he helped execute a search warrant at Hughes's alleged residence on January 7, 2003. Within 10 to 15 seconds after entering the home, he found Alexander in the basement with $2200 in his pockets. And 8 to 10 feet away from Alexander, Blokhuis continued, was a bucket containing another $12,873 in cash. Blokhuis also testified that, during the search of the basement, officers also found crack in a small plastic bag concealed in the wall. Sergeant Joholski testified that $3675 of the $12,873 found in the bucket was identified as money used in previous undercover drug buys.

Hughes's cousin, Keith Wallace, testified that he was living at 430 North Tenth Street when law enforcement officials executed their search warrant. Fifteen to twenty minutes before the police arrived, Wallace said, he observed Hughes, Alexander, and Toasie Williams counting large amounts of money in the kitchen. He was on his way to the basement when he heard the police enter. At that moment, Wallace testified, Alexander and Williams followed him downstairs. Wallace also stated that he noticed a bucket containing money in the basement that he had not noticed when he was in the basement earlier that day.

As part of his plea agreement with the government, Hughes also testified at Alexander's trial. He stated that he moved to La Crosse in 2002 to sell drugs because the location provided greater profits and less competition than Chicago. Around October or November of 2002, Hughes said, he met Alexander while in the Cook County jail and told Alexander he could make a lot of money in La Crosse. Alexander expressed an interest in making money there and so, in December of 2002, Hughes and Alexander traveled to La Crosse together. Hughes said that he and Alexander returned together to Chicago, where Alexander helped Hughes obtain more crack a few days before the sale to the undercover officer on January 3. Hughes also testified that he and Alexander returned to La Crosse with the crack in their car and that Alexander knew the crack was in the car. After Hughes testified, the government rested its case. Alexander called no witnesses.

The jury found Alexander guilty, and the district court sentenced him to 300 months' imprisonment. He appealed, and we affirmed his conviction but ordered a limited remand under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), for the district court to decide whether it would have imposed the same sentence had it known the guidelines were only advisory. *See United States v. Booker*, 543 U.S. 220 (2005). The district court responded that it would have imposed the same sentence, and we subsequently affirmed Alexander's sentence. *United States v. Alexander*, Nos. 03-3051 and 03-3064 (7th Cir. July 21, 2005).

Alexander then moved under § 2255 to have his conviction vacated, claiming as relevant here that he was denied his Sixth Amendment right to effective assistance of counsel because his attorney knew he wished to testify, but refused to let him. The district court acknowledged that stopping Alexander from testifying would have constituted deficient performance if that is what counsel did, but the court concluded that Alexander was not prejudiced. The district court reasoned that, because Alexander was caught with $2200 in cash in his pockets while standing near a bucket with almost $13,000 more including law enforcement "buy money," his proposed testimony that Agent Hynek and Hughes lied about his involvement in the drug transactions would not have changed the outcome of his trial. Thus, the district court denied relief.

We analyze Alexander's claim of ineffective assistance of counsel under the familiar two-prong test laid out in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires proof that counsel's performance fell below minimum professional standards and that this deficient performance "prejudiced" the defendant. *Id.* at 687. Both parties agree that a defendant has a constitutional right to testify, s*ee Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987); *United States v. Manjarrez*, 258 F.3d 618, 623 n.3 (7th Cir. 2001), and that if Alexander's attorney did deprive him of that

right, as he alleges in his supporting affidavit, his counsel's performance would be considered deficient. Their quarrel lies in whether Alexander was prejudiced.

We previously have analyzed whether a defendant who forfeits his constitutional right to testify because of counsel's deficient performance is automatically prejudiced, and we concluded that he is not. *Barrow v. Uchtman*, 398 F.3d 597, 608 n.12 (7th Cir. 2005). Instead, we observed that our precedent supports the view that a defendant who alleges that counsel's malfeasance caused him to forego testifying must still show, as the Supreme Court explained in *Strickland*, 466 U.S. at 694, that there is a reasonable probability that his failure to testify affected the outcome of the trial. *Barrow*, 398 F.3d at 608 n.12 (citing *Rodriguez v. United States*, 286 F.3d 972, 983-84 (7th Cir. 2002)); *see also Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986) ("Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ . . . ."); *Canaan v. McBride*, 395 F.3d 376, 385-86 (7th Cir. 2005) (explaining counsel's deficient performance regarding defendant's right to testify also must undermine confidence in outcome of trial to satisfy *Strickland*); *Gomez v. Jaimet*, 350 F.3d 673, 679-80 (7th Cir. 2003) (same); *Epsom v. Hall*, 330 F.3d 49, 55 (1st Cir. 2003) (same); *Rega v. United States*, 263 F.3d 18, 21 (2nd Cir. 2001) (same); *United States v. Tavares*, 100 F.3d 995, 998 (D.C. Cir. 1996) (same); *Foster v. Delo*, 39 F.3d 873, 877 (8th Cir. 1994) (*en banc*) (same).

In his affidavit Alexander alleges that, had he been called to testify in his own defense as he asked trial counsel to do, he would have testified that both Agent Hynek and Shannon Hughes were lying about his involvement in Hughes's drug activities. According to Alexander, he was not helping Hughes sell drugs, nor was he trying to set up his own drug dealing operation in La Crosse. Alexander adds that he also would have testified that he and Hughes talked only about girls and partying when they were together in the Cook County jail. After he was released from jail, he says, Hughes invited him to travel together from Chicago to La Crosse to attend a party, and Alexander accepted his invitation. While in La Crosse, Alexander visited Wallace, Hughes's relative, and played video games and talked about girls. At no time, however, did he agree to or participate in selling drugs with Hughes.

But Alexander ignores the reality that, had he taken the stand, he surely would have been impeached with his prior drug convictions, which would have weighed against his credibility. *See Taylor v. United States*, 287 F.3d 658, 662 (7th Cir. 2002) (explaining that risks of testifying include certainty of impeachment with prior convictions); *Rodriguez*, 286 F.3d at 983-84 (probative value of prior drug

conviction in impeaching defendant's credibility would outweigh potential prejudice at his trial on drug charges).  It is not reasonably likely that Alexander's testimony, given his diminished credibility as a convicted felon, would have swayed the jury's verdict in any way.  Viewed against the government's overwhelming evidence—Hughes's testimony that Alexander was involved in selling drugs with him, Agent Hynek's testimony that Alexander played middleman in a drug transaction the agent conducted with Hughes, Detective Byerson's testimony that he observed Alexander speak with a confidential informant during one of the police department's controlled drug transactions, Wallace's testimony that he observed Alexander and Hughes counting large amounts of money together, and Investigator Blokhuis's testimony that Alexander was standing beside almost $13,000 in cash and carrying $2200 at the time of his arrest—it seems more likely that Alexander's testimony would have bolstered the jury's confidence in its guilty verdict.  *See United States v. Jocic,* 207 F.3d 889, 893 (7th Cir. 2000) (explaining that, if "defendant decides to testify and deny the charges against him and the finder of fact thinks he is lying, his untruthful testimony becomes evidence of guilt to add to the other evidence")*; United States v. Williams,* 136 F.3d 1166, 1168 (7th Cir. 1998) ("[n]ot the least of the evidence" the jury could have relied upon in finding defendant guilty was his own testimony).  Thus, even if we credit Alexander's affidavit as proof of counsel's deficient performance under the first prong of *Strickland,* we conclude that he cannot show prejudice as required under *Strickland*'s second prong.

Accordingly, we AFFIRM the district court's denial of Alexander's § 2255 motion.