In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3471

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES A. STUART, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 10-CR-288 — **Charles N. Clevert, Jr.**, *Judge.*

ARGUED SEPTEMBER 13, 2013 — DECIDED DECEMBER 3, 2014

Before BAUER, FLAUM, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* After a three-day trial, jurors found James Stuart guilty of three counts of tax evasion for failing to pay almost $239,400 in income tax between 2005 and 2007. *See* 26 U.S.C. § 7201. Stuart moved for a new trial and judgment of acquittal because, he argued, his trial counsel inadequately defended him. The district court denied the motions, and on appeal Stuart maintains that his trial counsel performed

deficiently. Ordinarily it is imprudent to raise on direct appeal a claim of ineffective assistance if, as is usually the case, the record is not developed. *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014). But the district court allowed Stuart's new counsel to develop a record on his claim, so we consider it. Because nothing in that record demonstrates constitutionally ineffective assistance, we affirm.

During opening statements Stuart's trial counsel asserted the theory of Stuart's defense: Stuart believed that he owed no taxes. He explained that Stuart thought that the money he earned from his family business, New Age Chemical, was not income and that the United States had no authority to tax income. Stuart had adopted these views after reading a book called "Cracking the Code," which urges people to resist paying income taxes, but his counsel told the jury that Stuart learned his ideas from his fellow church patrons. Counsel described Stuart as a curious, determined, and "kooky, not criminal" person. Only after he received no response to his inquiries from the IRS, the Secretary of the Treasury, or his accountants about his tax ideas, counsel mused, did Stuart begin to refrain from paying income tax.

The prosecution opened its case with witnesses who testified that Stuart had wilfully defied his obligation to pay taxes for 2005 to 2007. Beverly Schlipp, Stuart's sister and co-owner and vice president of New Age Chemical, stated that beginning around 2004, Stuart told her that he was not lawfully required to pay income taxes. He therefore directed her to stop withholding tax from his salary. She added that a couple of years later Stuart repeated that he wished not to pay income taxes, so New Age Chemical continued not to withhold

taxes. Three of Stuart's accountants also testified that Stuart did not want to pay income taxes and referred to Stuart's tax-resistor emails about "Cracking the Code." Two IRS special agents furnished inculpatory communications from Stuart. They submitted: (1) several letters that Stuart mailed to the IRS declaring that he was not liable for taxes; (2) a letter that Stuart sent to a local newspaper proclaiming that only a few people had income-tax obligations and that accountants and lawyers fail to give valid tax advice; and (3) a letter he wrote to the IRS and the Secretary of the Treasury in which, to evade taxes, he renounced his United States citizenship. Finally an IRS investigator testified that Stuart routinely paid income tax before 2004, but when, in 2007, Stuart requested tax refunds, the IRS told him then that his wages were taxable and his tax protest had no basis in law.

After the prosecution rested, Stuart's trial counsel did not put on any case in defense, so the trial moved to closing arguments. Before those arguments began, in a colloquy with Stuart, the judge asked him whether he knew that he had the right to testify on his own behalf. Stuart answered that he understood this right and that he nonetheless knowingly and voluntarily waived it. During closing arguments his counsel repeated the defense theory that Stuart believed that he owed no income tax between 2005 and 2007. Referring to evidence that the prosecution had used (Stuart's emails, letters, and conversations with the IRS and his accountants), counsel argued that Stuart was a curious, passionate, and possibly crazy person who simply was earnestly trying to understand the tax code. He was not, counsel urged, a conniving criminal thwarting tax responsibility.

The jury rejected Stuart's defense and convicted Stuart of three counts of tax evasion. But the case was not over. Stuart hired a new attorney to represent him at sentencing, and he asked for a new trial or judgment of acquittal based on ineffective assistance of his trial counsel. The district court held a hearing on that claim and received testimony from three witnesses. First Stuart testified that his decision not to testify was involuntary because he did not believe that his trial attorney was prepared. He acknowledged, however, that his counsel had received from him before trial his written synopsis of his version of events, which set forth his tax-protester beliefs. Second his daughter, Erin, testified that when she worked at New Age Chemical in 2009, Beverly Schlipp embezzled funds from the company and was fired. Stuart argued that trial counsel might have profitably elicited these facts on cross-examination of Schlipp. Third Joel Nettesheim, one of Stuart's accountants, emphasized that Stuart sincerely believed that he did not have to pay income tax.

The district court denied Stuart's motions, finding no ineffective assistance. It reasoned that the colloquy during trial, where Stuart explained that he was freely relinquishing his right to testify, refuted his contrary testimony at the post-verdict hearing. The court found, therefore, that Stuart had validly waived his right to testify. His trial counsel performed adequately, the court added, because counsel had advanced Stuart's theory that he believed that he had no tax-payment obligations. Counsel did so during his opening statement and closing argument as well as through his examination of the evidence elicited from the prosecution's witnesses and exhibits. Finally, the court observed, extrinsic evidence about Beverly

Schlipp's alleged embezzlement would have been excluded. After denying Stuart's motions, the court sentenced him to a 33-month term of imprisonment.

On appeal Stuart maintains that his trial counsel was ineffective for four reasons: (1) He did not interview Stuart before trial to ascertain that the correct source of his tax-protesting beliefs was "Cracking the Code;" (2) counsel did not present a case in defense, where he could have called Nettesheim and Erin Stuart as witnesses; (3) he did not cross-examine Beverly Schlipp about her possible embezzlement; and (4) counsel did not call Stuart to testify in his own defense. To prevail on a claim of constitutionally deficient performance, we examine the record as a whole, *see Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009), and from it Stuart must establish both that trial counsel's performance was objectively unreasonable and that he was prejudiced by that performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). We review this district court's decision to reject his claim de novo. *See United States v. Ruzzano*, 247 F.3d 688, 697 (7th Cir. 2001); *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000).

We conclude that trial counsel was not deficient in any of the four ways that Stuart has identified. First, the record shows that counsel conducted an adequate pretrial investigation of Stuart. Counsel requested and received from Stuart a written synopsis of his version of the events, which included his tax beliefs. These beliefs became the defense theory at trial, which counsel raised during opening and closing, and which he grounded in the evidence elicited from the prosecution's

witnesses and exhibits. Stuart replies that a pretrial interview would have disclosed the true source of his tax-protester beliefs. But Stuart has not explained how correcting the source of those beliefs, which the jury rejected as a defense in any case, might have exculpated him. He thus cannot show prejudice. *See United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011); *Keys v. Duckworth*, 761 F.2d 390, 394 (7th Cir. 1985); *United States v. Davis*, 406 F.3d 505, 510 (8th Cir. 2005).

Second, counsel's decision not to call Nettesheim and Erin to testify during the defense case does not support a claim of ineffective assistance. *See Menzer v. United States*, 200 F.3d 1000, 1003-04 (7th Cir. 2005); *United States v. Best*, 426 F.3d 937, 945–46 (7th Cir. 2005); *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000). Nettesheim was a witness in the prosecution's case, and Stuart does not articulate what additional, admissible evidence his counsel would have offered in a defense case. Nettesheim could not recall any specific facts about Stuart other than his "passionate" belief about his views about income taxes, and this testimony was presented to the jury during the prosecution's case. Likewise, Stuart cannot point to admissible testimony that Erin might have offered. She did not work at the company before 2009, so she had no relevant, personal knowledge about its tax position. Stuart thus has not shown that the failure to call either witness prejudiced his case. *See Pole*, 570 F.3d at 946; *Best*, 426 F.3d at 945–46.

Third, counsel's decision not to cross-examine Beverly Schlipp about the alleged embezzlement does not constitute ineffective assistance. *See Bergman v. McCaughtry*, 65 F.3d 1372, 1379–80 (7th Cir. 1995); *DeLozier v. Sirmons*, 531 F.3d 1306, 1326

(10th Cir. 2008). Counsel could have asked Schlipp about embezzlement during her cross-examination, but Stuart gives us no reason to believe that she would have confessed to a crime for which she has never been charged. And counsel would not have been entitled to introduce extrinsic evidence (such as an accusation through his daughter Erin) to prove embezzlement because Federal Rule of Evidence 608 forbids introducing extrinsic evidence to prove the truthfulness of prior acts of misconduct. *See* FED. R. EVID. 608(b); *United States v. Holt*, 486 F.3d 997, 1001–02 (7th Cir. 2007); *United States v. McGee*, 408 F.3d 966, 981–82 (7th Cir. 2005).

Finally, counsel's decision not to call Stuart to testify at trial does not amount to ineffective assistance. Stuart had the right to testify in his defense, *see Rock v. Arkansas*, 483 U.S. 44, 52–53 (1987), but at trial, under scrutiny from the inquiring judge, he explicitly waived this right and acquiesced to counsel's strategy. "The decision not to place the defendant on the stand is a classic example" of a strategic trial decision. *United States v. Norwood*, 798 F.2d 1094, 1100 (7th Cir. 1986); *see United States v. Dyer*, 784 F.2d 812, 817 (7th Cir. 1986); *Higgins v. United States*, 267 F.3d 1202, 1205 (11th Cir. 2001); *Robison v. Johnson*, 151 F.3d 256, 261–62 (5th Cir. 1998). And in this case trial counsel's decision not to call Stuart to testify was reasonable. Stuart's far-fetched, tax-protesting ideas were already presented to the jury through his letters to the IRS, and his emails and conversations with the accountants. They were also reinforced during opening statements and closing arguments.

Calling Stuart to testify would not have added to this information but might have further alienated the jury.

Accordingly the decision of the district court is AFFIRMED.