In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-1736

PHILLIP HARTSFIELD,

*Petitioner-Appellant,*

*v.*

STEPHANIE DORETHY,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-cv-05816 — **John Robert Blakey**, *Judge.*

ARGUED JANUARY 8, 2020 — DECIDED FEBRUARY 3, 2020

Before FLAUM, ROVNER, and SCUDDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* Fifteen years ago, an Illinois jury convicted Phillip Hartsfield of first-degree murder and home invasion. Hartsfield unsuccessfully challenged his convictions on direct appeal and collateral attack in the Illinois courts. In 2014, Hartsfield petitioned a federal district court for a writ of habeas corpus alleging seven claims. The district court denied his petition and Hartsfield appealed. We certified one of the issues Hartsfield presented for review: whether the state court

reasonably held that Hartsfield's counsel did not usurp his personal right to testify at trial. We now affirm the judgment of the district court.

## I. Background[1]

On January 4, 2004, Alberto Martinez found his brother Alejandro shot dead in his bed. Police responding to the home recovered two .40-caliber shell casings inside Alejandro's bedroom. The medical examiner identified four gunshot wounds on Alejandro's body and recovered one bullet. Police also noticed that the back door to the Martinez home had a crack along its narrow edge, as if it had been kicked or punched open. Later, the People of the State of Illinois ("the State") charged Phillip Hartsfield and Mohammed Abukhdeir with first-degree murder and home invasion. The co-defendants simultaneously tried their cases before separate Cook County juries.

### A. Trial

The State put Claudia Garcia, Candy Richmond, and Kristina Kasper on the stand. Together, the women's testimony established that they had attended a party at the Martinez home that lasted into the early morning hours on January 4. Alejandro Martinez and several other men were at the party. While there, Kasper called Hartsfield, with whom she was having a sexual relationship. Kasper got angry after she heard another woman on the phone with Hartsfield. After she hung up on Hartsfield, the men at the party asked Kasper why she

---

[1] We take the facts from the Illinois Appellate Court's opinions because they are presumptively correct on habeas review and Hartsfield has not rebutted this presumption. *See* 28 U.S.C. § 2254(e)(1); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018).

was dating "a black guy," and an argument broke out between the women and the men. As the women left the house between 4:30 and 5:00 a.m., the argument continued, and one of the men struck Kasper and her friend Richmond as they got into their car.

Garcia drove Kasper and Richmond home. During the car ride, Kasper and Richmond made several phone calls. According to Garcia, Richmond gave someone Martinez's address over the phone and threatened to have someone killed. Richmond subsequently denied making such a threat. As stated by Kasper, either she or Richmond called Hartsfield and gave him Martinez's address.

Another woman, Katherine Chrzan, testified at Hartsfield's trial. She claimed she was pregnant with Hartsfield's child in January 2004. Specifically, on January 4, Chrzan explained that Hartsfield was driving with Abukhdeir in Chrzan's car and they picked her up from a friend's house around 4:30 a.m. While in the car, Hartsfield received a phone call, and Chrzan heard a woman raise her voice. Hartsfield told the woman that he would be there in 20 minutes. Hartsfield drove to his house and brought Chrzan up to his bedroom while Abukhdeir waited in the car. Before Hartsfield left the room, he retrieved a shotgun from underneath his bed. Hartsfield departed his house around 6:30 or 7:00 a.m. and returned at 9:00 or 9:30 a.m.

At approximately 7:00 a.m., Hartsfield and Abukhdeir picked up Richmond and Kasper in Chrzan's car. Hartsfield drove to Martinez's home, where he and Abukhdeir knocked on the front door. When no one answered, they returned to the car and opened the trunk. Richmond saw Hartsfield pick up a silver automatic handgun. Hartsfield and Abukhdeir

then walked down the gangway beside Martinez's home, returning five minutes later.

Back at the car, Richmond heard Abukhdeir say that "he had blood all over him," and when she looked, Richmond saw blood on Abukhdeir's knuckles. Hartsfield told Abukhdeir to "shut the fuck up," to which Abukhdeir responded: "If it wasn't for me, you wouldn't have gotten through the back door."[2] Richmond also heard Abukhdeir say: "I hope you did it right." Kasper claimed she did not hear the men's conversation. After they left Martinez's home, Hartsfield stopped the car and put the gun in the trunk. He drove Kasper home first and Richmond second.

The next evening, Chrzan discovered her gas tank was almost empty and asked Hartsfield where he had driven her car earlier that morning. Hartsfield answered that he went to Chicago. He added that if he told her what had happened, she "wouldn't want to come around anymore," and that "if he ever went to jail for murder, he would kill himself." Shortly afterward, Chrzan overheard Hartsfield on the phone, asking if "Sally" was registered. Chrzan understood that "Sally" was a gun.

John Waszak, a friend of Hartsfield and Abukhdeir's, was an additional witness at their trials. He testified that on January 6, 2004, he was at the home of a man named Billy Thompson with Hartsfield and Abukhdeir. While there, Abukhdeir gave Waszak a knotted sock, which contained a .40 caliber gun barrel, spent casings, and live shells. Waszak recognized

---

[2] Martinez's aunt, who lived in the basement apartment of the Martinez home, did not hear any loud noises or notice anything unusual about the back door that morning.

the gun as "Sally" because he had previously sold it to Abu-khdeir. Waszak eventually threw the sock into the Des Plaines River. On cross-examination, defense counsel elicited testimony about inconsistencies between Waszak's testimony and his statements to police; Waszak's extensive criminal history; and the implausibility of Waszak dropping the sock off a bridge on a busy street.

After the State rested, Hartsfield did not put on a case. The jury convicted him of first-degree murder and home invasion. The judge sentenced him to consecutive terms of 45 and 6 years in prison.

### B. Direct Appeal and Collateral Attack

Hartsfield directly appealed his convictions and sentence arguing that the State failed to prove him guilty beyond a reasonable doubt. The Illinois Appellate Court affirmed, holding that a rational jury could have found Hartsfield guilty, highlighting that the circumstantial evidence against Hartsfield was strong. The Illinois Supreme Court denied Hartsfield's ensuing petition for leave to appeal.

Next, Hartsfield collaterally attacked his convictions and sentence. He petitioned the state trial court pro se contending that his trial counsel ineffectively assisted him when counsel (1) usurped his right to testify and (2) declined to call Thompson as a witness to impeach Waszak. The court appointed counsel, who amended Hartsfield's petition reiterating those same claims. Hartsfield attached to his petition affidavits from himself, his mother, and Thompson.

In his first affidavit, Hartsfield insists that he told counsel "many times" that he wished to testify, to which counsel re-

plied that he did not want Hartsfield to testify. Hartsfield fur-
ther maintains that counsel asked his mother to "convince"
him not to testify, and Hartsfield told her that counsel would
not let him testify. At trial, counsel told Hartsfield that he
would "get his chance" when the judge admonished him
about his right to testify, but the judge never did that. When
Hartsfield attempted to speak up, counsel "shushed" him. For
her part, Hartsfield's mother stated that counsel asked her to
convince Hartsfield not to testify and that Hartsfield informed
her that counsel would not let him testify; indeed, that coun-
sel "shushed" him.

In his second affidavit, Hartsfield described what his tes-
timony would have been if counsel would have permitted
him to testify in his own defense. Hartsfield asserted he spent
the night before the murder with Abukhdeir and Chrzan. Ac-
cording to his account, he left Chrzan asleep in his bedroom
and then drove to Chicago by himself. Around 7:00 a.m., he
unsuccessfully attempted to reach another woman with
whom he was having a sexual relationship. Chrzan called
Hartsfield at 8:00 a.m. asking where he was. After driving
downtown, Hartsfield turned around and arrived home
around 8:30 a.m. Hartsfield fell asleep and did not wake up
until 6:00 p.m.

The state trial court dismissed Hartsfield's postconviction
petition. The appellate court affirmed that judgment, apply-
ing *Strickland v. Washington*, 466 U.S. 668 (1984), to both inef-
fective assistance of counsel allegations. Important here, the
appellate court held that defense counsel made "a tactical de-
cision" in advising Hartsfield, who was aware that it was ul-
timately his decision not to testify. It found that the record did

not support Hartsfield's complaint that counsel prevented him from speaking up.

Relatedly, it ruled that Hartsfield's failure to contemporaneously assert his right to testify barred his ineffective assistance claim. Even if counsel deficiently performed, the court reasoned, that did not prejudice Hartsfield because it was not reasonably likely that his proposed testimony that he was driving around at the time of the murder would have affected the jury's verdict, especially given the strong circumstantial evidence against him. The Illinois Supreme Court denied Hartsfield's petition for leave to appeal that followed.

### C. Federal Habeas Petition

In 2014, Hartsfield petitioned a federal district court for a writ of habeas corpus under 28 U.S.C. § 2254, claiming that: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) counsel usurped his right to testify; and (3) counsel was ineffective for failing to call Thompson as a witness. The district court denied the petition and declined to issue a certificate of appealability in 2018.

We, however, granted Hartsfield's application for a certificate, limited to the question presented regarding his right to testify. We directed the parties to analyze whether the state appellate court unreasonably concluded that: (1) Hartsfield needed to contemporaneously assert his right to testify during his trial; and (2) *Strickland* applied to such a claim, rather than the harmless-beyond-a-reasonable-doubt standard from *Chapman v. California*, 386 U.S. 18 (1967). Furthermore, if the parties decided that *Strickland* did not apply, we asked the

parties to address whether Hartsfield suffered actual preju-
dice sufficient to justify habeas relief under *Brecht v. Abraham-
son*, 507 U.S. 619 (1993).

## II. Discussion

We review the district court's decision to deny habeas re-
lief de novo. *See Jones v. Zatecky*, 917 F.3d 578, 581 (7th Cir.
2019). The Antiterrorism and Effective Death Penalty Act
(AEDPA), however, sets the standard we apply to Hartsfield's
petition. The Act permits us to grant relief only if the decision
of the Appellate Court of Illinois, the last state court to ad-
dress Hartsfield's claim on its merits, was "contrary to, or in-
volved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the
United States." 28 U.S.C. § 2254(d); *see also Sims v. Hyatte*, 914
F.3d 1078, 1086–87 (7th Cir. 2019).

Hartsfield argues that the state court decision is contrary
to federal law because *Strickland* does not control these cir-
cumstances, and even if it did, the state appellate court unrea-
sonably applied it in rejecting his claim that his counsel
usurped his right to testify. "We give state courts broad lati-
tude in applying [*Strickland*'s] general standard." *Weaver v.
Nicholson*, 892 F.3d 878, 884 (7th Cir. 2018), *cert. denied*, 139 S.
Ct. 649 (2018) (citation omitted); *see also Knowles v. Mirzayance*,
556 U.S. 111, 123 (2009) (describing the standard of review on
*Strickland* claims evaluated under § 2254 as "doubly deferen-
tial"). In other words, "'[t]he bar for establishing that the state
court's application of the *Strickland* ineffective assistance of
counsel standard was 'unreasonable,' is a high one." *Felton v.
Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (quoting *Taylor v.
Bradley*, 448 F.3d 942, 948 (7th Cir. 2006)).

### A. *Strickland* and the Right to Testify

We begin with the question of how best to frame Harts-field's claim that his counsel usurped his right to testify. Hartsfield contends that he need not show prejudice when the case involves the right to testify, but that is contrary to our precedent and the unanimous weight of authority. *See Barrow v. Uchtman*, 398 F.3d 597, 603 n.4 (7th Cir. 2005) (holding that "*Strickland* is the appropriate governing precedent" in circumstances such as these); *see also Alexander v. United States*, 219 F. App'x 520, 523 (7th Cir. 2007) ("We analyze Alexander's claim of ineffective assistance of counsel under the familiar two-prong test laid out in *Strickland*[,] which requires proof that counsel's performance fell below minimum professional standards and that this deficient performance 'prejudiced' the defendant.") (citation omitted).

Nonetheless, we take this opportunity to clarify what we believe is explicit—but certainly implicit—in our earlier rulings: An ineffective assistance of counsel claim is the appropriate vehicle in which to allege that counsel violated a defendant's right to testify. *See United States v. Stuart*, 773 F.3d 849, 853 (7th Cir. 2014) (applying the *Strickland* analytical framework to a claim that counsel violated the defendant's right to testify); *Starkweather v. Smith*, 574 F.3d 399, 403–04 (7th Cir. 2009), *as corrected on denial of reh'g* (Aug. 7, 2009) (same); *Gross v. Knight*, 560 F.3d 668, 672–73 (7th Cir. 2009) (same); *United States v. Stark*, 507 F.3d 512, 521 (7th Cir. 2007) (same); *Canaan v. McBride*, 395 F.3d 376, 384 (7th Cir. 2005) (same); *Rodriguez v. United States*, 286 F.3d 972, 983–84 (7th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (May 21, 2002) (same); *Milone v. Camp*, 22 F.3d 693, 705 (7th Cir. 1994) (same);

*Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991); *United States v. Muehlbauer*, 892 F.2d 664, 669 (7th Cir. 1990).

Our sister circuits, so far as we can tell, all agree that "the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel." *Casiano-Jiménez v. United States*, 817 F.3d 816, 819 (1st Cir. 2016) (citation and quotation marks omitted); *see also Palmer v. Hendricks*, 592 F.3d 386, 397–98 (3d Cir. 2010) (collecting cases); *Matylinsky v. Budge*, 577 F.3d 1083, 1097 (9th Cir. 2009); *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009); *Winfield v. Roper*, 460 F.3d 1026, 1035 n.3 (8th Cir. 2006); *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998); *Wimberly v. McKune*, 141 F.3d 1187, *3 (10th Cir. 1998) (unpublished table decision); *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997); *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992). The *Strickland* standard applies to "any claim by the defendant that defense counsel has not discharged this responsibility—either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify …." *Artuz*, 124 F.3d at 79.

The courts of appeals are united in reaching this conclusion for good reason: "It is primarily the responsibility of the defendant's counsel, not the trial judge, to advise the defendant on whether or not to testify and to explain the tactical advantages and disadvantages of doing so." *United States v. Campione*, 942 F.2d 429, 439 (7th Cir. 1991) (quoting *United States v. Goodwin*, 770 F.2d 631, 637 (7th Cir. 1985)); *see also Teague*, 953 F.2d at 1534. Not to put too fine a point on it, but we have described "'[t]he decision not to place the defendant on the stand [as] a classic example' of a strategic trial decision." *Stuart*, 773 F.3d at 853 (quoting *United States v. Norwood*,

798 F.2d 1094, 1100 (7th Cir. 1986)) (additional citations omit-
ted); *see also Stark*, 507 F.3d at 516 (calling it a "sensitive aspect
of trial strategy") (quoting *United States v. Manjarrez*, 258 F.3d
618, 624 (7th Cir. 2001)).

Now, it is true that "[t]his [C]ourt has previously ruled
that the *Chapman* standard [not *Strickland*] applies when a pe-
titioner has been denied the right to testify." *Ortega v. O'Leary*,
843 F.2d 258, 262 (7th Cir. 1988) (citing *Alicea v. Gagnon*, 675
F.2d 913, 925 (7th Cir. 1982) (per curiam)). As an initial matter,
*Alicea* preceded *Strickland* by two years. More importantly, we
agree with Warden Dorethy that *Alicea* and its progeny stand
for the proposition that *Chapman*'s harmless error standard
applies when a court—*not counsel*—denies a defendant the
right to testify, at least on direct review. *See United States v.
Books*, 914 F.3d 574, 580 (7th Cir. 2019), *cert. denied*, 139 S. Ct.
2682 (2019) (citing *Ortega* and *Alicea* to support the assertion
that harmless error analysis applies when "the district court's
ruling constructively foreclosed [the defendant's] decision to
take the stand").

In *Ortega*, as we have previously explained, "the defend-
ant twice interrupted the proceedings and expressed his de-
sire to testify. The trial judge ordered the defendant to remain
silent … The defendant protested, but the court treated the
evidence as closed and allowed the case to proceed to closing
arguments." *United States v. Jones*, 844 F.3d 636, 646 (7th Cir.
2016). Similarly, in *Alicea*, the trial court "excluded [the de-
fendant's] alibi testimony simply because he failed to notify
the prosecution that he intended to raise such a defense." 675
F.2d at 916.

The Supreme Court's recent precedents are not to the con-
trary; in fact, they too draw a distinction between a court's

denial of a defendant's constitutional right and counsel's denial of that same right. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1511–12 (2018) (reasoning its ineffective-assistance-of-counsel jurisprudence did not apply in that case because "the violation of [the defendant's] protected autonomy right was complete *when the court allowed counsel to usurp control* of an issue within [the defendant's] sole prerogative." (emphasis added)).

This distinction is not arbitrary; it makes sense for reasons the Supreme Court originally articulated in *Strickland*, which we have since reiterated:

> In *Strickland*, for example, the Court discussed and distinguished various "Sixth Amendment contexts" in which prejudice to the defendant is legally presumed. The latter situations include cases of "state interference with counsel's assistance," and, most pertinently, cases involving "actual or constructive denial of the assistance of counsel altogether." Relying in part on the analysis in [*United States v.* ]*Cronic*, [466 U.S. 648, (1984)], … the Court in *Strickland* distinguished these latter circumstances on the grounds that prejudice to the defendant "is so likely that case by case inquiry into prejudice is not worth the cost," and that they "involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent." With respect to the kinds of errors by defense counsel that would normally form a basis for an ineffective assistance claim, on the other hand, the "government is not responsible for, and

hence not able to prevent" them, they "come in an in-
finite variety and are as likely to be utterly harmless in
a particular case as they are to be prejudicial," and they
cannot "be defined with sufficient precision to inform
defense attorneys correctly just what conduct to
avoid."[3]

*Siverson v. O'Leary*, 764 F.2d 1208, 1215–16 (7th Cir. 1985); *see
also Smith v. Robbins*, 528 U.S. 259, 287 (2000); *United States v.
Hernandez*, 948 F.2d 316, 319–20 (7th Cir. 1991); *Lange v. Young*,
869 F.2d 1008, 1012–13 (7th Cir. 1989); *Solles v. Israel*, 868 F.2d
242, 246 (7th Cir. 1989); *Sanders v. Lane*, 861 F.2d 1033, 1038 &
n.4 (7th Cir. 1988).

The Warden, of course, defends actual prejudice under
*Strickland* as the appropriate standard. Hartsfield, in his prin-
cipal brief, first vies for *Brecht*'s harmless-error standard for
habeas petitions. In his reply brief, however, Hartsfield de-
cides to operate outside the trial error paradigm and call for
the structural error standard to apply. In our view, the best
reading of the Supreme Court's decisions in this realm is that
*Strickland* controls because defense counsel allegedly inter-
fered with Hartsfield's right to testify. Accordingly, the state

---

[3] As a clarification, *Cronic* is an exception to *Strickland*'s prejudice
prong for the most extreme displays of professional incompetence. We
presume prejudice in those circumstances because "counsel was absent
from the proceedings and unavailable to make any tactical judgments
whatsoever. Thus, both *Strickland* and *Cronic* expressly treat cases involv-
ing the total lack of assistance of counsel as separate and distinct from
cases involving ineffective assistance of counsel." *Siverson*, 764 F.2d at
1216.

appellate court's decision to apply *Strickland* was not contrary to clearly established federal law.[4]

## B. Reasonableness of the State Court's Decision

In applying *Strickland*, the state appellate court rejected Hartsfield's right-to-testify claim, concluding that Hartsfield did not satisfy either of the test's two prongs: (1) he has not established counsel deficiently performed because he did not contemporaneously assert his right to testify at trial; and (2) assuming his allegations are true and counsel forbade him from testifying, that decision did not ultimately prejudice Hartsfield's case. This was a reasonable application of *Strickland*.

First, Illinois law requires a defendant to "protest a lawyer's refusal to allow her to testify during trial to preserve the right." *Thompson v. Battaglia*, 458 F.3d 614, 619 (7th Cir. 2006)

---

[4] To be sure, we have acknowledged that the call between an ineffective-assistance-of-counsel and an absence-of-counsel claim is a close one. *See Sanders*, 861 F.2d at 1037–38 & n.4. And in absence-of-counsel cases, we presume prejudice. *See Hernandez*, 948 F.2d at 320; *Lange*, 869 F.2d at 1013 (citations omitted). But even if this were an absence-of-counsel case—and it is not—the Supreme Court has never adopted, and thereby clearly established, a corresponding presumption of prejudice. *See Schmidt v. Foster*, 911 F.3d 469, 483 (7th Cir. 2018) (en banc) (noting "[t]here is no clearly established lesser standard for state-action denials."); *see also Arredondo v. Huibregtse*, 542 F.3d 1155, 1171 n.4 (7th Cir. 2008) (distinguishing *Ortega* because it "arose prior to Congress' enactment of [AEDPA] and, therefore, the court in *Ortega* was at liberty to apply a much more searching standard of review than the one to which AEDPA confines us."). Thus, the state court could not have contradicted clearly established Supreme Court precedent because there was never any clearly established precedent to begin with.

(citing *People v. Smith*, 680 N.E.2d 291, 302–03 (Ill. 1997)) (additional citations omitted); *see also People v. Medina*, 851 N.E.2d 1220, 1227 (Ill. 2006). Hartsfield and his mother both allege that Hartsfield communicated his desire to testify to his counsel. According to them, counsel disagreed and said he would not put Hartsfield on the stand. Counsel assured Hartsfield, however, that he would get his chance to speak when the trial judge admonished him of his right to testify. But the trial judge never so admonished Hartsfield, and when Hartsfield attempted to contemporaneously assert his right to testify on the record and in open court, he claims his counsel "shushed" him. Therefore, the court was unaware of Hartsfield's wishes, and in the eyes of the appellate court, that added up to waiver.

Only two of our decisions hold that a defendant did not properly preserve the right to testify. *See Stark*, 507 F.3d at 518–19 (illustrating and distinguishing *Ward v. Sternes* and *Ortega v. O'Leary* because of their unusual circumstances). It is thus worth reiterating our prior suggestion that "prudent counsel may choose to put such waivers on the record outside the presence of the jury, as is standard practice in some courts." *Thompson*, 458 F.3d at 619 (citing *Taylor v. United States*, 287 F.3d 658, 662 (7th Cir. 2002)). Even though "we do not require judges to question defendants regarding their desire to testify," we certainly prefer it. *Id.*[5]

---

[5] Indeed, we are troubled by the obligation that Illinois caselaw appears to impose upon a defendant to contemporaneously assert a right to testify in circumstances where defense counsel has just silenced the defendant. Perhaps the Illinois Supreme Court will find occasion to take another look at its approach when it considers *Knapp* later this term. *See People v. Knapp,* 2019 IL App (2d) 160162, ¶¶ 39–40, *appeal allowed*, 132 N.E.3d 283 (Ill. 2019).

Not all jurisdictions, however, follow Illinois's lead when it comes to requiring a defendant's contemporaneous assertion of the right to testify to preserve it for judicial review. That has consequence in the habeas context: "The variety in practice among the state courts and the various federal courts shows … that there is no standard clearly established by the Supreme Court of the United States that is binding on all." *Thompson*, 458 F.3d at 619; *see also Arredondo*, 542 F.3d at 1165; *Jenkins v. Bergeron*, 824 F.3d 148, 153 (1st Cir. 2016) (agreeing with our analysis and stating that "the Supreme Court has never articulated the standard for assessing whether a criminal defendant has validly waived his right to testify or determined who has the burden of production and proof under particular circumstances.").

In ruling that Hartsfield did not contemporaneously assert his right to testify, the state court did not unreasonably apply clearly established Supreme Court precedent because there was no clearly established Supreme Court precedent to apply in the first place. *See Clark v. Lashbrook*, 906 F.3d 660, 664 (7th Cir. 2018) ("Where Supreme Court cases 'give no clear answer to the question presented, let alone one in the petitioner's favor,' it cannot be said that the state court unreasonably applied Supreme Court precedent and thus 'relief is unauthorized.'" (citation omitted)).[6]

---

[6] Hartsfield contends *Rock*, *McCoy*, and *Garza v. Idaho*, 139 S. Ct. 738 (2019) all clearly establish that a defendant need not point to an on-the-record assertion of his right to testify in the trial court. As to *Rock*, we have cautioned against reading it "too broadly in the habeas context" because it applies, if at all, at a very high level of generality. *Hanson v. Beth*, 738 F.3d 158, 164 (7th Cir. 2013) (citing *Arredondo*, 542 F.3d at 1170). Turning to *McCoy* and *Garza*, Hartsfield has not even begun to argue (let alone analyze) that those decisions apply retroactively on collateral review. *Cf.*

Without the benefit of clearly established federal law, we cannot say the Illinois Appellate Court unreasonably decided that Hartsfield did not meet his burden of proving that his attorney in fact prohibited his testimony. Assuming we could independently find that Hartsfield met this burden, then that would of course constitute deficient performance. *See, e.g.*, *Galowski v. Murphy*, 891 F.2d 629, 636 (7th Cir. 1989) ("The attorney may not, as a tactical decision, forbid the defendant from testifying, but instead may only advise the defendant as to what the best approach would be.").

Second, and though we need not address it, Hartsfield cannot satisfy the prejudice prong under *Strickland* either. It is, in short, not reasonably probable that his proposed testimony would have affected the jury's verdict. As a preliminary matter, the circumstantial evidence against Hartsfield was strong. Two eyewitnesses placed him at the scene of the crime, armed with a weapon and a motive to use it. Hartsfield's own comments later that night further implicated him in the incident. More to the point, Hartsfield's uncorroborated story is that he was by himself and driving around during the time of the murder. We agree with the Warden that this amounts "to little more than a generic denial of guilt, which is insufficient to establish prejudice." In a nutshell, the state court reasonably applied *Strickland*.

---

*United States v. Khan*, 769 F. App'x 620, 623–24 (10th Cir. 2019), *petition for cert. filed*, No. 19-7223 (U.S. Jan. 2, 2020) ("Even assuming *McCoy* applies retroactively to this collateral proceeding, [the defendant] has not made a debatable showing that its holding applies under the facts of his case.").

## C.  Scope of the Certificate of Appealability

For the sake of completeness, we note that Hartsfield brings two claims in addition to his ineffective assistance claim based on his right to testify. Hartsfield argues that the state appellate court unreasonably discounted his claims that the evidence at trial was insufficient for the jury to convict him on, and counsel was ineffective for failing to call a witness. We included neither of these issues in our order granting Hartsfield a certificate of appealability. The only issue we certified for appellate review was the right-to-testify issue.

Therefore, those other evidentiary issues are outside the scope of the certificate and we decline to review them. *See Peterson v. Douma*, 751 F.3d 524, 529 (7th Cir. 2014) ("[W]e have repeatedly said that an appeals panel will decide the merits of only those issues included in the certificate of appealability." (citation omitted)). We also decline Hartsfield's implicit request to amend the certificate this late in the game. *See Thompson v. United States*, 732 F.3d 826, 831–32 (7th Cir. 2013) (instructing counsel who wish to raise additional claims to not simply brief them but first request permission to do so).

## III. Conclusion

The Appellate Court of Illinois reasonably held that defense counsel did not usurp Hartsfield's right to testify at trial. For that reason, we AFFIRM the judgment of the district court denying Hartsfield's habeas petition.